**ACTION DISTRIBUTING COMPANY,**
**Plaintiff–Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 1038,**
**Defendant–Appellee.**

**No. 91–1642.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 24, 1992.

Decided Oct. 26, 1992.

Christopher M. Murray, Keller, Thoma, Schwarze, Schwarze, Dubay & Katz, Detroit, Mich., Stewart J. Katz (argued and

briefed), Bloomfield Hills, Mich., for plaintiff-appellant.

James M. Moore, Gregory, Moore, Jeakle & Heinen, Detroit, Mich. (argued and briefed), for defendant-appellee.

Before: KEITH, NELSON, and RYAN, Circuit Judges.

RYAN, Circuit Judge.

Action Distributing Company, Inc., a Michigan alcohol distributor, brought suit to vacate an arbitration award in favor of the defendant, International Brotherhood of Teamsters Local 1038. The award, rendered under the Labor Management Relations Act, 29 U.S.C. § 185, interpreted the parties' rights under a collective bargaining agreement. Both parties moved for summary judgment, and the district court found in favor of the defendant. Action's appeal asks this court to decide (1) whether the award Action seeks to vacate was barred, because of principles of res judicata and collateral estoppel, by an earlier arbitration award between the parties, and if not, (2) whether the award was drawn from the essence of the collective bargaining agreement.

We find that the district court did not err in its determination of these questions, and so affirm its judgment.

## I.

In July 1989, another Michigan alcohol distributor, Wayne Distributing Company, divided and sold its business to three of its competitors. Action purchased a 14% share and Don Lee Distributor, not a party to this action, purchased approximately 86%.[1] The terms of the transfers were to be governed by the 1987–1990 collective bargaining agreement between Teamsters Local 1038 and the Downriver, Detroit, Oakland, Macomb Wholesalers Association, Inc., to which all the distributors belonged.

Twenty-eight Wayne employees were displaced by this transfer. The parties agreed that responsibility for hiring former Wayne employees would be borne proportionately by Action and Don Lee according to the percentage of the distribution business that was transferred; thus, Action was to be responsible for only four employees while Don Lee was responsible for the remaining twenty-four. No agreement was made as to which Wayne employees, in particular, would be the responsibility of Action and which that of Don Lee.

Although the collective bargaining agreement does not directly address the fate of employees in a multiple transferee situation, section 4.27 of the agreement does contemplate a single transferee:

(a) When a territory and/or beer or wine is transferred to another Employer, person, firm, partnership or corporation, hereinafter called "Transferee", doing business in the area covered by this agreement, *all seniority employees affected by such transfer shall have the right to continued employment with the Transferee as needed.*

(b) The Transferee shall advise the Union of the number of such seniority employees to be transferred. *Such employees shall be transferred in order of their seniority* and classification and shall retain their seniority for fringe benefit purposes....

(d) *Employees not transferred shall be assigned to a Preferential Hiring List for thirty-six (36) months. If an employee accepts employment with another distributor in the industry, or accepts his/her severance withdrawal, then such employee's right to preferential hire shall end.*

(Emphasis added.) A single transferee has the obligation to use displaced employees to fill any hiring needs, in order of the employees' seniority; any unutilized employees have their names placed on a preferential hiring list and retain a right to continued employment. Displaced employees either are eventually hired by the transferee or are removed from the list by accepting employment with another distrib-

---

1. A third distributor purchased an inconsequential portion, and that distributor's obligations are not at issue here.

utor, taking severance withdrawal, or simply by the passage of thirty-six months.

While Don Lee had immediate hiring needs for some Wayne employees at the time of the transfer, Action did not. The central problem among Action, Don Lee, and Local 1038 therefore became how to establish a preferential hiring list for future employment of the remaining Wayne employees—those not hired by Don Lee. Various alternatives were explored but the parties were unable to agree. One proposed alternative was Local 1038's suggestion that the employees be allowed, in order of seniority, to choose the transferee to whom they wished to be assigned; those choosing Action would be placed on an Action-specific hiring list, since it had no immediate hiring needs, and those choosing Don Lee would either begin working or be placed on a Don Lee-specific list, depending on where they fell in the seniority hierarchy. Action refused this suggestion, claiming that because of its superior employment benefits, every employee who had a preference would choose to be employed by Action—which would leave Action with the responsibility of hiring the four most senior, and hence most expensive, employees. Local 1038, though, unilaterally implemented its plan in lieu of continuing to negotiate—and in fact, Action's prediction was in large part borne out when the first, second, third, and seventh employees on the seniority list opted for assignment to Action's preferential hiring list rather than for certain employment with Don Lee.

Local 1038 filed a grievance on behalf of the four employees who chose Action. It was the Local's contention that the employees had the right to force Action to place them on its particular preferential hiring list, and that Action therefore violated the collective bargaining agreement by failing to do so. The matter was referred to arbitration and the arbitrator, Jerald Lax, reasoned that "preservation of actual employment was paramount [in the agreement], and ... inclusion on a preferential hiring list was a secondary protection to be afforded in the event that immediate employment of a displaced employee was not pos-

sible." Accordingly, he denied the grievance, finding it

> not possible to conclude that Action violated the contract by rejecting the Union's suggestion that seniority be used as the basis for determining the transferee to which an employee would be assigned, rather than for determining which displaced employees would be afforded available work.... [T]his is not to say that the parties might not reasonably have mutually agreed to the proposal of the Union, but rather than [sic] in the absence of such agreement, I cannot conclude that Action breached the contract.

The union, Lax concluded, had no right to require Action to accept four employees for its preferential hiring list.

The next development came in December 1989, when Action developed hiring needs. Rather than hiring the four former Wayne employees who had been the grievants in the earlier arbitration—and who by this time, with one exception, were the only Wayne employees to not be employed at Don Lee—Action solicited a total of fifteen less senior and already employed former Wayne employees for the openings. Action took the position that the former grievants had proceeded at their own risk, and so forfeited their seniority rights when they chose to be on the preferential hiring list that Arbitrator Lax had concluded Action could not be forced to accept.

Local 1038 filed a second grievance on the grounds that Action now violated the agreement by refusing to notify and offer work to those same four former Wayne employees once work had become available. A new arbitrator, Martin L. Kotch, heard this matter and found in favor of the Local. It is this arbitration award that Action brought suit to vacate.

## II.

■ The court's review of a grant of summary judgment is de novo; it uses the same test as used by the district court. *Dallas & Mavis Forwarding Co. v. General Drivers, Warehousemen & Helpers, Local Union No. 89*, 972 F.2d 129, 133 (6th Cir.1992). Summary judgment is proper if

there is no genuine issue as to any material fact, such that the moving party is entitled to judgment as a matter of law. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988); *see* Fed.R.Civ.P. 56(c). These rules of review also apply where, as here, the parties have filed cross-motions for summary judgment. *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991).

The Supreme Court, first in the 1960 *Steelworkers* trilogy,[2] and more recently in *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), has set forth a highly deferential standard for judicial review of labor arbitration awards. *Enterprise Wheel* frames the standard as follows:

> [I]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contact is different from his.

*Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. at 1362. The arbitrator is, of course, subject to certain limitations:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.

*Id.* at 597, 80 S.Ct. at 1361. The *Misco* decision then reemphasized the Supreme Court's fidelity to this deference to arbitral awards:

> The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, *a court should not reject an award on the ground that the arbitrator misread the contract.... [A]s long as the arbitrator is even arguably construing or applying the contract ...,* *that a court is convinced he committed serious error does not suffice to overturn his decision.*

*Misco,* 484 U.S. at 37–38, 108 S.Ct. at 370 (emphasis added). And as observed in *Interstate Brands Corp., Butternut Bread Div. v. Chauffeurs, Teamsters, Warehousemen & Helpers Local 135,* 909 F.2d 885 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991), in a question of procedural arbitrability such as res judicata or collateral estoppel, a court's role is even more sharply circumscribed than it is with the already highly deferential standard of review for substantive issues. *Id.* at 889.

Arbitrator Kotch determined that the earlier arbitration award did not bar arbitration of the second grievance because the issues to be decided in the two matters were different. Action argued that the earlier decision by Arbitrator Lax meant that the grievants, by adopting a "mistaken course of conduct," had forfeited their preferential hiring rights entirely. If this were so, then general res judicata and collateral estoppel principles, along with section 18.10 of the agreement providing for the binding nature of arbitration awards, would bar further decisions. To Arbitrator Kotch, though,

> [t]he issue directly confronted by Arbitrator Lax was whether the Agreement *required* Action to accept the choice of former Wayne employees as to the transferee for whom they would work. While obviously not unrelated, the issue here is different in kind, not merely in degree. The present grievance asserts that Action, by offering employment to: (a) less senior former Wayne employees, and (b) who have previously accepted employment "with another employer in the industry," has preempted the preferential hiring rights of the Grievants and has worked a forfeiture of those rights.... *Asking whether the right to choose*

---

**2.** *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers of Am. v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

*one's transferee employer exists under the Agreement differs significantly from inquiring as to the conditions under which preferential hiring rights can be lost.*

(Emphasis added.) Therefore, in his view, his consideration of the claim was not barred.

The circumstances affecting the parties changed substantially when Action decided to hire, and when it chose to solicit, former Wayne employees who were less senior than the four grievants, and already employed, in contravention of the express terms of the collective bargaining agreement pertaining to single transferees. Arbitrator Lax, before Action had hiring needs, determined that the agreement's terms could not be taken to mean that the union could unilaterally establish a preferential hiring system in the case of multiple transferees and then force Action to accede to it. Arbitrator Kotch, though, was asked to decide whether the contractual terms applied to the forfeiture of preferential hiring rights in the multiple transferee situation as well as in the single transferee situation.

 While Action employs only the term "res judicata," it makes arguments referring both to claim preclusion, or res judicata, *and* issue preclusion, also referred to as collateral estoppel. *Cf. Dodrill v. Ludt*, 764 F.2d 442, 443 (6th Cir. 1985). Claim preclusion mandates that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies—not only with respect to every matter that was *actually* litigated in the first matter, but also as to every ground of recovery that *might* have been presented. *White v. Colgan Elec. Co.*, 781 F.2d 1214, 1216 (6th Cir.1986). Action's argument of claim preclusion is unsuccessful here. The cause of action asserted in the second arbitration could not have been undertaken until Action had begun soliciting for new hires; obviously, then, the ground of recovery that was presented in the second arbitration could *not* have been presented at the time of the first arbitration.

 In contrast to claim preclusion, the doctrine of issue preclusion or collateral estoppel dictates that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Although the result reached in the second arbitration is fundamentally the same result as was avoided in the first—that is, the hiring of the four grievants—the bases for the decisions were different. Coincidence of result is not the same as equivalence of issues. As analyzed by Arbitrator Kotch, and we agree, the issue in the first arbitration was "whether the right to choose one's transferee employer exists under the Agreement," and the issue in the second arbitration was an inquiry into "the conditions under which preferential hiring rights can be lost." These are clearly different issues, and the resolution of one did not bar the resolution of the other.

Arbitrator Kotch decided that the agreement's silence as to multiple, as opposed to single, transferees did not preclude a decision, despite the language of section 18.4 of the agreement denying power to an arbitrator "to add to, subtract from or modify this Agreement. . . ." Arbitrator Kotch found it possible to apply the existing contract language regarding single transferees, and its likely intent, to the problem at hand and to reach a conclusion. In his words, "the contract *does deal with rights to continued employment in the circumstance of a transfer*, and this Arbitrator . . . believes it his duty and responsibility to determine what those rights will be, even though the specific circumstance of multiple transferees was not addressed. . . ." Accordingly, he required that the four employees "be treated as if they were on the Preferential Hiring List after such time as all other former Wayne employees had extinguished their rights to placement on the List under Section 4.27." He determined that "the

effect of [the grievants'] aborted attempt to exercise choice" did *not* serve to terminate their hiring rights, and further, that this initial misinterpretation of the agreement by Local 1038 did not result in all the former Wayne employees simply remaining on the preferential hiring list irrespective of their employment status. Thus, Action should have solicited the four grievants for the openings, rather than former Wayne employees who were no longer entitled to be on the preferential hiring list.

 The plaintiff relies on the test set forth in *National Gypsum Co. v. United Steelworkers of Am.*, 793 F.2d 759, 766 (6th Cir.1986), in arguing that Arbitrator Kotch's award failed to draw its essence from the agreement. According to *National Gypsum,* an arbitration award should be vacated when:

> (1) an award conflicts with the express terms of the collective bargaining agreement ...; (2) an award imposes additional requirements that are not expressly provided in the agreement ...; (3) an award is without rational support or cannot be rationally derived from the terms of the agreement ...; and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement....

*Id.* (citations omitted). Plaintiff first argues that Arbitrator Kotch's interpretation of section 4.7 violates the first and second prongs of the test. Extending the agreement's explicit treatment of the case of single transferees to apply to multiple transferees, though, is a reasonable extension of the contractual language, and well within the range of permissible arbitral interpretation. In light of the deference this court must accord arbitral decisions, Arbitrator Kotch's interpretation cannot be said either to be clearly in direct conflict with or an additional requirement to the agreement. *See Dallas & Mavis Forwarding Co.*, 972 F.2d at 135.

Finally, plaintiff suggests that Arbitrator Kotch's multiple references to the equities of the situation betray a violation of the fourth prong of *National Gypsum.* A discussion of equitable considerations does not, without more, violate *National Gypsum,* however; the test seeks to determine whether a decision is *based* on such considerations, to the exclusion of contractual language. *Vic Wertz Distrib. Co. v. Teamsters Local 1038*, 898 F.2d 1136, 1142–43 (6th Cir.1990). The contractual language provides an ample basis for the arbitral decision, and therefore, Arbitrator Kotch's references to equitable considerations are appropriate, and do not serve to abrogate the other bases for the award.

III.

The judgment of the district court is AFFIRMED.