NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0430n.06
Filed: May 23, 2005

No. 04-1193

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ALKEN-ZIEGLER, INCORPORATED | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED AUTOMOBILE, AEROSPACE | ) | EASTERN DISTRICT OF MICHIGAN, |
| AND AGRICULTURAL IMPLEMENT | ) | SOUTHERN DIVISION |
| WORKERS OF AMERICA, LOCAL UNION | ) | |
| 985 | ) | |
| Defendant-Appellee. | ) | |

Before: BOGGS, Chief Judge; COOK, Circuit Judge; and BEER, District Judge.[*]

BEER, District Judge. Alken-Ziegler, Incorporated, (Company) appeals from the district court's grant of summary judgment affirming an arbitration award in favor of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and Local Union 985 (Union). For the following reasons, we find that, even in light of our deferential review, the arbitrator disregarded the provisions of the labor contract. Therefore, we reverse the district court's decision and vacate the arbitration award.

I

---

[*]The Honorable Peter H. Beer, United States District Judge for the Eastern District of Louisiana, sitting by designation.

-1-

The Company and the Union were parties to a labor contract effective December 15, 1999. In March, 2001, the Company notified the Union that it would be closing its Novi plant and that it would be necessary to terminate all of the employees at the facility. As a result of the plant closing on October 17, 2001, all but one employee was terminated during the calendar year, 2001. The Company refused to pay vacation- pay benefits to employees who did not work for the Company on January 1, 2002. The Union filed a grievance.

Article 16 (61) of the labor agreement sets forth the eligibility requirement for payment of vacation benefits:

(a)    Employees shall be eligible for vacations, time off and vacation pay as set forth below.

(b)    For purposes of eligibility, the vacation year will be considered the calendar year period from January 1st to December 31.

(c)    An employee covered by the agreement who is actually working on January 1st of any year and who has at least six (6) months seniority and has worked at least eight hundred (800) hours from and after January 1st of the previous year shall be paid the equivalent of two-and-one half (2-1/2) days vacation pay.

\* \* \*

(f)    Employees with twelve (12) months or more of seniority who have worked more than eight hundred (800) hours, but less than sixteen hundred (1600) hours, during the vacation year, shall receive a pro-rated vacation pay on the basis of the ratio of their actual hours to sixteen hundred (1600) hours, but not to exceed the full vacation pay to which they were entitled by reason of their seniority and hours worked as set forth above.

(g)    Vacation pay will be computed on a straight time forty (40) hour basis including applicable shift premium. The employee's hour basis including applicable shift premium. The employee's hourly rate in effect when vacation is taken will be used to compute vacation pay. If an employee is laid off after six (6) months service, their vacation pay will be pro-rated same as above.

Pursuant to Article 5 of the labor contract, the parties arbitrated the grievance. At the arbitration the Union asserted that because it was not the employees' fault that they were unable to work the full year, the employees were entitled to their vacation pay. The arbitrator granted the grievance, allowing all plaintiffs, who, but for being laid off, would have been able to continue employment and thereby qualify for vacation benefits. The arbitrator reasoned that "[i]t would be unreasonable to cause such forfeitures particularly where an employee has no control over the situation."

The Company filed a complaint in the district court asserting that the arbitrator's award contradicted the clear, mandatory commands of the labor contract, which required that an employee be "actually working" for the Company as of January 1, 2002, to receive vacation pay. The district court granted the Union's motion for summary judgment and upheld the arbitrator's award. The Company appealed.

II

This court reviews a grant of summary judgment de novo. *Brooks v. Am. Broadcasting Cos., Inc.*, 932 F.2d 495, 500 (6th Cir. 1991). But, because we review an arbitrator's decision here, our review is extremely deferential. *Beacon Journal Publ'g Co. v. Akron Newspaper Guild*, 114 F.3d 596, 599 (6th Cir. 1997).

III

While deferential, our review is "not toothless" when an arbitrator's award disregards the explicit provisions of the contract. *Id.* at 599. We must vacate an award if it is based upon "'general considerations of fairness and equity' instead of the exact terms of the agreement." *Id.* at 600. In this labor contract, the phrase "actually working" is unambiguous—an employee must work on January 1 to be eligible for vacation pay. The arbitrator never gave any explanation as to why the phrase "actually working" was ambiguous. He simply concluded that the provision's harsh effects on employees warranted a finding of ambiguity. By his own admission, he found that the provision was not met by the employees. ( ". . . but for the employer's actions, the employees <u>would have become </u>entitled to the benefit."). His "resorting to a reference to reasonableness" in his written opinion  constituted a complete disregard for the contract provisions.

The arbitrator's responsibility was to enforce the labor contract as written. He did not. The result was the imposition of  "his own brand of industrial justice." *Id.* at 600; *Storer Broad. Co. v. Am. Fed'n of Television and Radio Artists,* 600 F.2d 45, 48 (6th Cir. 1979). As such, the arbitration award cannot stand.

IV

Accordingly, we **REVERSE** the decision of the district court and **VACATE** the arbitration award.

BOGGS, Chief Judge, dissenting. I dissent because I disagree with the majority that the term "actually working" is unambiguous. When the arbitrator must interpret a contract ambiguity, our case law is now quite clear (despite my dissent) that our review is restrained by "one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer-Stevens Co. v. United Steelworkers of Am.*, AFL-CIO, Dist. 27, Sub-Dist. 5, 913 F.2d 1116, 1169 (6th Cir. 1990); *and see id.* at 1170-71 (Boggs, J., dissenting). The parties contracted for the arbitrator's construction of the contract, not the court's. Consequently, as long as the court finds that the arbitrator was "arguably construing or applying the contract and acting within the scope of his authority," *United Paperworkers Int'l Union, AFL-CIO, et al. v. Misco, Inc.*, 484 U.S. 29, 38 (1987), the court is not free to substitute its own interpretation even when it disagrees with the arbitrator or finds his interpretation erroneous or "strained or even seriously flawed." *Bruce Hardwood Floors v. S. Council of Indus. Workers*, 8 F.3d 1104, 1108 (6th Cir. 1993); *Action Distrib. Co. v. Int'l Bhd. of Teamsters, Local 1038*, 977 F.2d 1021, 1025 (6th Cir. 1992) (citing *Misco*, 484 U.S. at 38 (1987)).

An arbitrator arguably construes a contract when his interpretation "draws its essence from the collective bargaining agreement." *Enterprise Wheel*, 363 U.S. at 597. To establish whether the arbitrator's award *fails* to draw its essence from the agreement, this Circuit uses the test it enunciated in *Cement Divisions, National Gypsum Co. v. Union Steelworkers of America, AFL-CIO-CLC, Local 135*, 793 F.2d 759, 766 (6th Cir. 1986):

> (1) an award conflicts with express terms of the collective bargaining agreement, (2) an award imposes additional requirements that are not expressly provided in the

agreement, (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement.

793 F.2d at 766 (internal citations omitted). The arbitrator's reading of the contractual provision "actually working on January 1st" is not "without rational support." It is unclear, for example, whether anyone would *physically* be at the plant working on New Year's Day. If not, then the term "actually working" might instead refer to employees actually on the payroll on that day. In any case, unless the employees were in fact on the premises working on January 1, the contract language is ambiguous. The arbitrator's interpretation could be considered far-fetched, but that is insufficient to override the parties' agreement to submit their grievances to an arbitrator rather than to the courts. The agreement guarantees them only an arbitration decision that arguably construes the contract, not an arbitration decision that construes the contract correctly.

The majority also objects to the arbitrator's use of equitable considerations. Nevertheless, the arbitrator was within his mandate to consider questions of past practice and equity because he used these to interpret ambiguities in the contract rather than to replace its plain language. *See Beacon Journal Publ'g Co. v. Akron Newspaper Guild, Local Number 7*, 114 F.3d 596, 601 (6th Cir. 1997) ("Arbitrators commonly utilize past practice or industry customs to interpret the meaning of ambiguous, or even general, terms and clauses in a contract."); *Action Distrib.*, 977 F.2d at 1027 ("A discussion of equitable considerations does not, without more, violate *National Gypsum*, however; the test seeks to determine whether a decision is *based* on such considerations, to the exclusion of

contractual language."); *accord Local 120, Int'l Molders & Allied Workers Union, ALF-CIO v. Brooks Foundry, Inc.*, 892 F.2d 1283, 1288 (6th Cir. 1990).

For these reasons, I respectfully dissent.