**DEPRENYL ANIMAL HEALTH, INC., Plaintiff,**

v.

**The UNIVERSITY OF TORONTO INNOVATIONS FOUNDATION, Defendant.**

**No. CIV. A. 00–2234–CM.**

United States District Court, D. Kansas.

Aug. 10, 2001.

William A. Rudy, David V. Clark, La-throp & Gage L.C., Kansas City, MO, Jeffrey D. Harty, Edmund J. Sease, Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, IA, for Plaintiff.

William B. Kircher, Shook, Hardy & Bacon, LLP, Kansas City, MO, David A. Rameden, Shook, Hardy & Bacon, LLP, Overland Park, KS, Paul W. Rebein, Shook, Hardy & Bacon, LLP, Tampa, FL, for Defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This lawsuit is a declaratory judgment action filed by plaintiff Deprenyl Animal Health, Inc. against defendant The University of Toronto Innovations Foundation involving a dispute over a patent license agreement and an underlying United States patent. This matter is before the court on defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to dismiss pending binding arbitration (Doc. 19).

### I. Facts

Plaintiff is a corporation organized under the laws of Louisiana and having its principal place of business in Overland Park, Kansas. Plaintiff is a subsidiary of Draxis Health Inc. ("Draxis"), a Canadian corporation headquartered in Ontario, Canada. Plaintiff was incorporated to make use of a chemical compound known as L–Deprenyl in the animal market. Plaintiff's product is now sold under the trademark Anipryl® by Pfizer, Inc., who is licensed under the '449 patent.

Defendant is a corporation organized under the laws of Canada and having its offices in Toronto, Canada. Defendant is a technical licensing company founded by the University of Toronto to assist in commercial exploitation of inventions made by University of Toronto academic researchers. Defendant does not own or operate any offices or facilities in Kansas, nor does defendant employ any person or representative in Kansas. Defendant has never sold or advertised any products in Kansas.

In 1991, plaintiff approached defendant for a license under patent applications owned by defendant. The following year, plaintiff and defendant entered into a license agreement for technology that later matured into United States Patent 5,767,-164 ("the '164 patent") held by defendant. Pursuant to the terms of the license agreement, defendant granted plaintiff an exclusive license to make, use, or sell the "licensed product."

The essential terms of the license agreement initially were negotiated between Edward Kenney, president of defendant corporation, and James Doherty, president of Draxis,[1] both of whom were located in Toronto. The negotiations culminated in a letter of intent written to Mr. Kenney from Mr. Doherty. Plaintiff contends that, at this time, Draxis was only a minority shareholder of plaintiff and that Draxis had no involvement in the negotiation of the agreement.

With regard to the specific terms of the license agreement, plaintiff and defendant

---

1. At the time, Draxis was known as Deprenyl Research Limited.

entered into a course of dealings whereby telephone and mail contact regularly were made between Mr. Kenney and David Stevens, president of plaintiff corporation, in Kansas. Plaintiff claims that Mr. Kenney traveled to Kansas in 1991 to negotiate the license agreement, but defendant asserts that Mr. Kenney does not recall this particular visit. In any event, on May 21, 1992, Mr. Kenny signed the license agreement in Toronto on behalf of defendant, and the following day, Mr. Stevens signed the license agreement in Overland Park on behalf of plaintiff.

Pursuant to the terms of the license agreement, defendant kept plaintiff informed as to the status of ongoing patent prosecution, which included sending copies of patent applications and patent office correspondence to plaintiff in Kansas for review and comment. Moreover, defendant was paid license fees directly by plaintiff from Kansas. The license agreement, however, states that all payments are to be made to defendant in Canadian dollars and that the agreement is to be construed in accordance with Canadian law. In 1994, Mr. Kenney traveled to Overland Park to discuss with Mr. Stevens a compromise regarding a dispute over plaintiff's performance under the license agreement. After the meeting, plaintiff and defendant eventually executed an amendment to the licensing agreement. Mr. Stevens executed the amendment in Kansas on behalf of plaintiff.

In December 1998, Draxis issued a press release announcing that it had obtained FDA approval for the sale of Anipryl for the treatment of canine cognitive dysfunction. In February 1999, defendant sent notice to plaintiff that any sales of Anipryl would be subject to the royalty provisions of the license agreement. The notice letter was sent to plaintiff in Kansas at the address stated in the license agreement. Defendant received a response from plaintiff's president on letterhead indicating that the response came from Ontario. All further communications from defendant to plaintiff were sent to plaintiff's Canadian office, and all responsive letters to defendant were received from plaintiff's Canadian office.

## II. Discussion

 Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine that the exercise of jurisdiction comports with due process and that an applicable statute potentially confers jurisdiction by authorizing service of process. *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1209 (10th Cir.2000). The Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process; therefore, the court proceeds directly to the constitutional issue. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 17 F.3d 1302, 1305 (10th Cir.1994).

 Under the due process analysis, the "constitutional touchstone" is "whether the defendant purposely established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). There must be some act by which the nonresident party purposefully avails itself of the privilege of conducting activities in the forum state. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The purposeful availment requirement ensures that a defendant will not be sued in a foreign jurisdiction solely as a result of the unilateral activity of another party. *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174.

 Consistent with due process, specific jurisdiction may be conferred over a

nonresident defendant where the court's exercise of jurisdiction directly arises from a defendant's forum related activities. To determine whether specific jurisdiction is appropriate, the court must first decide whether the defendant has such minimum contacts within the forum state "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559 (1979). Second, the court must then consider whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

## A. Minimum Contacts

██ To determine whether minimum contacts exists in a contract case, the court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King,* 471 U.S. at 478–79, 105 S.Ct. 2174; *Rainbow Travel Serv., Inc. v. Hilton Hotels Corp.,* 896 F.2d 1233, 1237 (10th Cir.1990). A contract with an out-of-state resident is insufficient, standing alone, to establish minimum contacts in that out-of-state forum. *Id.*

█ Telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction. *Cont'l Am. Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1313–14 (10th Cir.1982). In some circumstances, even a single letter or phone call to the forum state may meet due process standards so long as such contact creates a "substantial connection" with the forum.

*Burger King,* 471 U.S. at 475 n. 18, 105 S.Ct. 2174. The key issue is whether the defendant's contacts are attributable to his own actions and generally requires affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state. *Rambo v. Am. S. Ins. Co.,* 839 F.2d 1415, 1420 (10th Cir.1988) (quoting *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 840 (9th Cir.1986)).

██ In this case, the court finds significant the fact that Mr. Kenney traveled to Kansas in 1991 to negotiate the license agreement at issue.[2] *Ceva Labs., Inc. v. Wilson,* Civ. A. No. 88–2609–S, 1989 WL 106719, at *2 (D.Kan. Aug. 21, 1989) ("[I]t is significant ... that defendant made a purposeful journey to Kansas in connection with the licensing agreement being negotiated."). In *Maverick Paper Co. v. Omaha Paper Co., Inc.,* 18 F.Supp.2d 1232, 1237 (D.Kan.1998), the court held that "[d]efendant's presence [in Kansas] at the contract negotiations and his mailed correspondence with plaintiff establish that he was aware of the relationship between [plaintiff and defendant] and that he should have known that his interference would have repercussions in Kansas." The court accordingly found that defendant's alleged actions were substantially connected to, and sufficiently established minimum contacts with, Kansas. Indeed, other jurisdictions find determinative that a defendant traveled to the forum state to negotiate the contract at issue. See, e.g., *Stop–A–Flat Corp. v. Electra Start of Michigan, Inc.,* 507 F.Supp. 647, 650–51 (E.D.Pa. 1981) (corporate president's one visit to

---

2. The court recognizes that Mr. Kenney does not recall a visit to Kansas in 1991. However, if the parties present conflicting affidavits, which is the case here, all factual disputes are resolved in favor of the plaintiff, and plaintiff's prima facie showing is sufficient notwithstanding any contrary evidence presented

by the moving party. *Behagen v. Amateur Basketball Ass'n of the United States,* 744 F.2d 731, 733 (10th Cir.1984). Thus, the court assumes for purposes of this motion that Mr. Kenney traveled to Kansas in 1991 to negotiate the license agreement.

forum state in order to negotiate contract held sufficient to allow jurisdiction); *Nat'l Cathode Corp. v. Mexus Co.*, 855 F.Supp. 644, 647 (S.D.N.Y.1994) (holding jurisdiction permissible over foreign corporation whose only contact with forum state was an initial meeting with plaintiff that was essential to the formation of the contract); *Heller Fin., Inc. v. Ohio Sav. Bank*, No. 00–C–2612, 2001 WL 315201, at *3 (N.D.Ill. Mar. 30, 2001) (finding insufficient minimum contacts where no defendant representative traveled to forum state to negotiate contract but rather all negotiations occurred via telephone and facsimile).

The court finds that Mr. Kenney's visit to Kansas to negotiate the license agreement, along with the telephone calls and mail between Mr. Kenney in Canada and Mr. Stevens in Kansas to further negotiate the license agreement and defendant's sending of copies of patent applications and patent office correspondence to plaintiff in Kansas, constitute (albeit tenuous) minimum contacts with Kansas. Moreover, the court finds that defendant's contacts arose when it entered into the license agreement and continued in the course of performing the agreement. Thus, the court finds that a nexus exists between defendant's forum related contacts and the plaintiff's cause of action.

**B. Reasonableness**

▆ In determining whether the exercise of jurisdiction is so unreasonable as to violate fair play and substantial justice, the Court considers (1) the burden on defendant; (2) the forum state's interest in resolving the dispute; (3) plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *OMI*

*Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir.1998).

▆ The first factor, the burden on defendant, is of great concern in this case. While the Tenth Circuit has recognized that defending a suit in a foreign jurisdiction is not as burdensome as in the past, *Continental Am. Corp.*, 692 F.2d at 1314 (citing *Hanson*, 357 U.S. at 250–51, 78 S.Ct. 1228), the fact that defendant is from a foreign country is significant. "When the defendant is from another country, this concern is heightened and 'great care and reserve should be exercised' before personal jurisdiction is exercised over the defendant." *OMI Holdings*, 149 F.3d at 1096 (quoting *Asahi*, 480 U.S. at 114, 107 S.Ct. 1026). Defendant is a Canadian corporation who maintains no offices in Kansas and employs no agents in Kansas. To litigate this case in Kansas, defendant will have to travel outside its home country and it will be forced to litigate the dispute in a foreign forum unfamiliar with the Canadian law governing the dispute. Accordingly, the court finds that this factor weighs strongly in defendant's favor.

The second factor is the interest of the State of Kansas in resolving the instant action. States have an important interest in providing a forum in which their residents can seek redress for injuries. *Burger King*, 471 U.S. at 483, 105 S.Ct. 2174. Moreover, the state's interest is implicated where resolution of the dispute requires application of the forum state's law. *Asahi*, 480 U.S. at 115, 107 S.Ct. 1026. In this case, Kansas is plaintiff's principal place of business. However, neither plaintiff nor defendant is incorporated in Kansas. Rather, defendant is a Canadian corporation, plaintiff is incorporated in Louisiana, and plaintiff is wholly owned by Draxis, a Canadian company. Moreover, Canadian law, and not Kansas law, will govern the resolution of the con-

tract dispute, and federal law controls any issues involving the enforcement of defendant's patent. The court finds that Kansas has only a minor interest in the present dispute.

The third factor is whether plaintiff may receive convenient and effective relief in another forum. The court is aware that on July 28, 2000, plaintiff filed a lawsuit against defendant in the Superior Court of Justice in Ontario, Canada, seeking inter alia a declaration that the license agreement does not apply to plaintiff, that plaintiff's product is not covered by the agreement, and that plaintiff's product is not covered by the licensed patent. Thus, it appears that plaintiff can receive, and in fact is receiving, relief in another forum. Also relevant to this analysis is the fact that plaintiff is a subsidiary of Draxis, a Canadian company, *OMI Holdings*, 149 F.3d at 1097, and that plaintiff's president is apparently operating from Draxis's home base in Canada. These facts convince the court that plaintiff may receive convenient and effective relief in an alternate forum.

The fourth factor requires the court to examine whether Kansas would best further the interstate judicial system's interest in obtaining the efficient resolution of controversies. In other words, the court must determine whether Kansas is the most efficient place to litigate the dispute. To evaluate this factor, courts generally consider the location of the witnesses, where the underlying wrong occurred, what substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. *Id.* (citations omitted). It is difficult for the court to determine where the majority of witnesses are located and where the underlying wrong may have occurred since neither party addresses these considerations. However, the license agreement is governed by Canadian substantive law, and, considering the pending case filed by plaintiff in Canada, the court notes that exercising jurisdiction in these circumstances would not prevent piecemeal litigation. The court concludes that litigating the dispute in Kansas would not be more efficient than in Canada or some other forum.

The fifth factor is the interest of the several states, in addition to the forum state, in advancing fundamental substantive social policies. Specific to the international field, courts look to whether the exercise of jurisdiction interferes with the foreign nation's sovereignty. *Id.* Relevant factors include whether one of the parties is a citizen of the foreign nation, whether the foreign nation's law governs the dispute, and whether the foreign nation's citizen chose to conduct business with a forum resident. *Id.* (citations omitted). In the present case, defendant is a Canadian citizen, and the license agreement is governed by Canadian law. Thus, Canada's sovereign interest in interpreting its laws and resolving disputes involving its citizen is implicated. This factor weighs in favor of defendant.

## C. Conclusion

Examining the above five factors in their entirety, the court finds that to subject defendant to litigating this dispute in Kansas, which has no genuine interest in the dispute and with which defendant has only tenuous contacts, would be unreasonable and inconsistent with the notions of fair play and substantial justice. Accordingly, the court declines to exercise personal jurisdiction over defendant in this case.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to dismiss pending binding arbitration

(Doc. 19) is granted. The case is hereby dismissed in its entirety.