**DEPRENYL ANIMAL HEALTH, INC., Plaintiff–Appellant,**

v.

**The UNIVERSITY OF TORONTO INNOVATIONS FOUNDATION, Defendant–Appellee.**

No. 01–1648.

United States Court of Appeals, Federal Circuit.

July 23, 2002.

Edmund J. Sease, McKee, Voorhees & Sease, P.L.C., of Des Moines, IA, argued for plaintiff-appellant. With him on the brief were Jeffrey D. Harty and Ronald M. Sotak.

J. Michael Jakes, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for defendant-appellee. With him on the brief was Michael A. Morin. Of counsel were Robert F. Shaffer and Dennis P. O'Reilley.

Before GAJARSA, LINN, and DYK, Circuit Judges.

GAJARSA, Circuit Judge.

The plaintiff-appellant, Deprenyl Animal Health, Inc. ("DAHI"), seeks review of the final judgment of the United States District Court for the District of Kansas dismissing the case in its entirety. The district court held that the exercise of jurisdiction over the defendant-appellee, the University of Toronto Innovations Foundation ("UTIF"), would violate due process. Consequently, the district court granted UTIF's motion to dismiss for lack of personal jurisdiction or, in the alternative, to dismiss pending binding arbitra-tion. For the reasons explained below, we hold that the exercise of personal jurisdiction over UTIF is consistent with the requirements of due process. We therefore reverse the dismissal and remand with instructions to stay proceedings in the district court pending the outcome of the arbitration proceedings.

## I. BACKGROUND

The plaintiff, DAHI, is a corporation organized under Louisiana law that maintains its principal place of business in Overland Park, Kansas. DAHI is a subsidiary of a Canadian corporation, Draxis Health Inc. ("Draxis"), which is headquartered in Ontario.

The defendant, UTIF, is a corporation organized under Canadian law that maintains its offices in Toronto, Canada. UTIF is a technical licensing company that assists the University of Toronto with commercialization of the inventions developed by its academics. UTIF neither owns nor operates any Kansas facilities. It employs no one in Kansas and has neither sold nor advertised any products there.

In 1991, DAHI approached UTIF seeking a license under certain of UTIF's patent applications. In 1992, DAHI and UTIF entered into a license agreement for technology that matured into UTIF's United States Patent No. 5,767,164 ("the '164 patent"). UTIF's president negotiated the essential terms of the license agreement with the president of Draxis (then known as Deprenyl Research Limited), in Toronto. Although Draxis is now DAHI's parent, at the time of the negotiations, Draxis was only a minority shareholder. Nevertheless, the president of Draxis negotiated on behalf of DAHI. DAHI alleges that Draxis itself had no involvement in the negotiations.

After the parties signed a letter of intent, DAHI and UTIF entered into a

course of dealings during which UTIF's president regularly made telephone and mail contact with DAHI's president in Kansas. DAHI alleges that UTIF's president traveled to Kansas once in 1991 to negotiate the license agreement and again in 1994 to resolve a dispute that resulted in an amendment to the agreement. UTIF asserts that its president does not recall the 1991 visit. The district court, however, did not hold an evidentiary hearing regarding jurisdiction. Therefore the court properly noted that all factual disputes must be resolved in DAHI's favor in order to evaluate its prima facie showing of jurisdiction. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 161 F.Supp.2d 1272, 1277 n. 2 (D.Kan.2001) ("*DAHI*") (citing *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir.1984)). In *Behagen*, the Tenth Circuit explained that: "[w]hen a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing," and that "[I]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor...." 744 F.2d at 733.

Federal Circuit law governs the resolution of this jurisdictional dispute, but it accords with Tenth Circuit law on this issue. *See Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1383 n. 1, 47 USPQ2d 1622, 1623 n. 1 (Fed.Cir.1998) (noting that the district court's task in evaluating whether the plaintiff has made a prima facie showing of personal jurisdiction over the defendant requires construing the pleadings and affidavits in the light most favorable to the plaintiff).

The parties entered into the license agreement on May 21 and 22, 1992, by signing separate copies of the agreement in Toronto, and Overland Park, respectively. As the agreement required, UTIF kept DAHI informed of the status of prosecution of the application that matured into the '164 patent. This included sending copies of patent applications and PTO correspondence to DAHI in Kansas. DAHI paid licensing fees to UTIF from Kansas, but in Canadian dollars.

The license agreement contains two clauses that are implicated by the present appeal: an arbitration clause and a choice of law clause. The arbitration clause provides:

### 16. ARBITRATION

16.1 In the event that any disagreement shall, from time to time, arise between the parties in connection with the interpretation, application or effect of this Agreement, then such disagreement shall be settled and determined by arbitration in accordance with the procedure agreed to by the parties within a period of fifteen (15) days following notice of such dispute to both parties and filing such agreement, in accordance with the provisions of the Arbitrations Act (Ontario).

The choice of law clause provides:

### 19. GOVERNING LAWS

19.1 This Agreement shall be interpreted and construed, and the legal relation contained therein shall be determined, in accordance with the laws of the Province of Ontario, Canada.

The present dispute began in December 1998, when DAHI's parent, the Canadian corporation, Draxis, issued a press release announcing FDA approval of a drug called Anipryl, which is used to treat canine cognitive dysfunction. In February 1999, UTIF sent a notice to DAHI contending that sales of Anipryl would be subject to the royalty provisions of the license agreement. UTIF sent the notice letter to DAHI at the Kansas address stated in the license agreement. DAHI's president responded in a letter written with Ontario

letterhead. All subsequent communications between UTIF and DAHI were sent to the parties' Canadian offices.

On May 25, 2000, DAHI filed the complaint in the present action in the district of Kansas, seeking a declaratory judgment that the license agreement is inapplicable to the sale of Anipryl and that the '164 patent is invalid and not infringed by the sale of Anipryl. On July 26, 2000, UTIF initiated arbitration in Canada. On July 28, 2000, DAHI filed an application in Canadian Superior Court, seeking a declaration that the dispute is incapable of being the subject of arbitration in Ontario. The district court took note

> that on July 28, 2000, plaintiff filed a lawsuit against defendant in the Superior Court of Justice in Ontario, Canada, seeking *inter alia* a declaration that the license agreement does not apply to plaintiff, that plaintiff's product is not covered by the agreement, and that plaintiff's product is not covered by the licensed patent.

*DAHI* at 1278. On March 4, 2002, the Ontario Superior Court of Justice ordered the Canadian court and arbitration proceedings stayed pending the determination of the present appeal before this court.

UTIF filed a motion to dismiss the district court case for lack of personal jurisdiction or, in the alternative, to dismiss pending binding arbitration. The district court granted UTIF's motion in its entirety without reaching the arbitration issue. *See generally DAHI*; *see also Deprenyl Animal Health, Inc. v. Univ. of Toronto Inoovations [sic.] Found.*, No. 00–2234 CM, (D.Kan. Aug.20, 2001) (entry of judgment dismissing case in its entirety). The court held that it lacked personal jurisdiction over UTIF. *DAHI* at 1278–79. After noting that the Kansas long arm statute authorizes the exercise of jurisdiction to the full extent permitted by the constitution, the district court analyzed whether the exercise of jurisdiction over UTIF would comport with due process. *Id.* at 1275. According to the district court, it would not. Although UTIF had sufficient minimum contacts with Kansas, the exercise of jurisdiction would nevertheless violate due process; it would be so unreasonable as to violate fair play and substantial justice. *Id.* at 1278.

DAHI appeals. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) because the district court's jurisdiction was based, in part, on 28 U.S.C. § 1338.

## II. STANDARD OF REVIEW

 Federal Circuit law governs the issue of personal jurisdiction in this patent-related case. *See Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354, 61 USPQ2d 1696, 1698–99 (Fed.Cir.2002) (stating that Federal Circuit law applies to determinations of personal jurisdiction over out-of-state defendants in patent infringement cases and declaratory judgment cases in which the defendant is a patentee); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377–78, 48 USPQ2d 1773, 1776 (Fed.Cir.1998) (applying Federal Circuit law to determine that district court had personal jurisdiction over out-of-state corporation where plaintiff asserted patent and related state law claims); *Akro Corp. v. Luker*, 45 F.3d 1541, 1543, 33 USPQ2d 1505, 1506–07 (Fed.Cir.1995); *but cf. Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 857, 50 USPQ2d 1304, 1307 (Fed.Cir.1999) (applying regional circuit law where the determination of personal jurisdiction was no longer "intimately involved in the substance of enforcement of the patent right" because there was no actual controversy over the patent issue asserted in the complaint (quoting *Viam Corp. v. Iowa Export–Import Trading Co.*, 84 F.3d 424, 428, 38 USPQ2d 1833, 1835 (Fed.Cir.1996))).

Whether the exercise of personal jurisdiction comports with due process is a question of law subject to *de novo* review. *Hildebrand,* 279 F.3d at 1354, 61 USPQ2d at 1698.

In contrast, regional circuit law governs the determination of whether DAHI's claims for noninfringement and invalidity fall within the scope of the arbitration clause of the parties' agreement. This is so because we apply Federal Circuit law only "to both substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right.'" *Flex–Foot, Inc. v. CRP, Inc.,* 238 F.3d 1362, 1365–66, 57 USPQ2d 1635, 1637 (Fed.Cir.2001) (quoting *Amana Refrigeration,* 172 F.3d at 855–56, 50 USPQ2d at 1307) (applying Federal Circuit law to the issues of whether an arbitral award must be set aside for failure of the arbitrator to construe patent claims and whether public policy precludes a party from waiving validity challenges in a settlement agreement, but applying regional circuit law to the issue of whether the award of arbitration fees was proper under the arbitration agreement). In *Flex–Foot,* we explained that the challenge to an arbitrator's award of fees was a matter of "state contract law interpretation and federal arbitration law" that was neither unique to patent law nor intimately involved in its substance. 238 F.3d at 1365, 57 USPQ2d at 1638 (citing *Am. Med. Sys., Inc. v. Med. Eng'g Corp.,* 6 F.3d 1523, 1532, 28 USPQ2d 1321, 1327 (Fed.Cir.1993) ("State law ... controls in matters of contract law and interpretation.")). Similarly, determining whether DAHI's noninfringement and invalidity claims fall within the scope of the arbitration clause is a question of contract interpretation. Although the answer will affect the forum in which the patent claims may be brought, the question is neither unique to patent law nor intimately involved in the substance of the patent rights. We therefore review the arbitrability of this dispute according to the law of the pertinent regional circuit. In this case, the law of the Tenth Circuit applies. Under Tenth Circuit law, the enforceability of forum selection, choice of law, and arbitration provisions are questions of law subject to *de novo* review. *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 956 (10th Cir.1992).

### III. DISCUSSION

On appeal, DAHI contends that the district court erred by determining that the exercise of personal jurisdiction over UTIF would violate due process. DAHI further contends that litigation on the invalidity and noninfringement issues should proceed despite the initiation of arbitration proceedings in Canada because those issues fall outside the scope of the arbitration clause. UTIF contends that this court should affirm the district court's dismissal both because the exercise of jurisdiction over UTIF would violate due process and because the agreement requires the infringement and validity issues to be resolved by binding arbitration in Canada. For the reasons explained below, we conclude that the exercise of personal jurisdiction over UTIF comports with the requirements of due process. We therefore reverse the dismissal and remand with instructions to stay proceedings pending the outcome of the Canadian arbitration proceedings.

### A. Personal Jurisdiction

As the district court noted, before a federal court can exercise personal jurisdiction over a defendant in a federal question case, the court must determine whether an applicable statute potentially confers jurisdiction by authorizing service of process on the defendant, and whether the exercise of jurisdiction would satisfy the requirements of due process. *Hilde-*

*brand,* 279 F.3d at 1354, 61 USPQ2d at 1698; *DAHI* at 1275 (citing *Peay v. Bell-South Med. Assistance Plan,* 205 F.3d 1206, 1209 (10th Cir.2000)). Rule 4 of the Federal Rules of Civil Procedure allows a plaintiff to rely on the state long arm statute of the state in which the federal district court sits to obtain statutory authorization for the exercise of personal jurisdiction. *See* Fed. R. Civ. Pro. 4(e) ("Unless otherwise provided by federal law, service upon an individual ... other than an infant or an incompetent person, may be effected in any judicial district of the United States (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State....").

 The Kansas long-arm statute authorizes the exercise of jurisdiction to the full extent permitted by the constitution. *Matter of Hesston Corp.,* 254 Kan. 941, 870 P.2d 17, 25 (1994) ("The Kansas long arm statute ... is liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause ...." (internal quotation marks omitted) (quoting *Anderson v. Heartland Oil & Gas, Inc.,* 249 Kan. 458, 819 P.2d 1192 (1991) (citing K.S.A. 1990 Supp. 60–308))); *see also OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir.1998) ("Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, we proceed directly to the constitutional issue." (quoting *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 17 F.3d 1302, 1305 (10th Cir.1994))). Recognizing that the inquiries collapsed into a single question, the district court proceeded directly to analyze the constitutional issue. *DAHI* at 1275. We do the same.

 Because this is a federal question case, the due process requirements of the Fifth Amendment are at issue. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1560 n. 1, 30 USPQ2d 1001, 1003 n. 1 (Fed.Cir.1994). Although it was developed in the context of the due process clause of the Fourteenth Amendment, we apply the standard articulated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny to Fifth Amendment due process cases arising under the federal patent laws. *Hildebrand,* 279 F.3d at 1355, 61 USPQ2d at 1699 (citing *Akro,* 45 F.3d at 1545, 33 USPQ2d at 1508).

 *International Shoe* and its progeny establish a two-pronged test for whether the exercise of jurisdiction comports with due process. First, the defendant must have "minimum contacts" with the forum. Where a defendant's contacts are continuous and systematic, due process permits the exercise of general jurisdiction. *See LSI Indus. Inc. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1375, 56 USPQ2d, 1965, 1970 (Fed.Cir.2000) ("General jurisdiction arises when a defendant maintains "continuous and systematic" contacts with the forum state even when the cause of action has no relation to those contacts." (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984))). General jurisdiction is not at issue in this case. In this case, the question is whether UTIF's contacts authorize the exercise of specific jurisdiction. For specific jurisdiction, the "minimum contacts" prong requires the plaintiff to show that the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1360, 58 USPQ2d 1774, 1776 (Fed.

Cir.2001) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The second prong of the due process test affords the defendant the opportunity to defeat jurisdiction by presenting a compelling case that other considerations render the exercise of jurisdiction so unreasonable as to violate "fair play and substantial justice." *Id.* (quoting *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174).

In *Akro,* this court described the pertinent Supreme Court jurisprudence by articulating a three-factor test. 45 F.3d at 1545, 33 USPQ2d at 1508. The three factors for determining whether the exercise of personal jurisdiction over an out-of-state defendant comports with due process are: 1) whether the defendant "purposefully directed" its activities at residents of the forum; 2) whether the claim "arises out of or relates to" the defendant's activities in the forum; 3) whether the exercise of jurisdiction is "reasonable and fair." *Inamed,* 249 F.3d at 1360, 58 USPQ2d at 1776 (quoting *Akro,* 45 F.3d at 1545, 33 USPQ2d at 1508). In *Inamed* we explained that "[t]he first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Id.* (citing *Akro,* 45 F.3d at 1545, 33 USPQ2d at 1508).

In the instant case, the district court determined that UTIF had sufficient minimum contacts with Kansas. Nevertheless, it held that the exercise of jurisdiction over UTIF would be so unreasonable as to violate due process. We agree with the district court that UTIF's contacts with Kansas are sufficient. We disagree that subjecting UTIF to the present litigation in Kansas would be so unreasonable as to violate fair play and substantial justice. Consequently, we conclude that the exercise of jurisdiction over UTIF by the dis-trict court in this case comports with due process.

### 1. *Minimum Contacts*

■ The district court concluded, correctly, that UTIF had sufficient minimum contacts with Kansas. *DAHI* at 1277. In fact, UTIF's contacts with the forum state surpassed those of the defendants in *Inamed,* 249 F.3d at 1360–64, 58 USPQ2d at 1776–78, and *Akro,* 45 F.3d at 1541, 33 USPQ2d at 1509, in which this court determined that the exercise of jurisdiction over out-of-state patentees comported with due process.

In *Inamed* this court reversed a dismissal for lack of personal jurisdiction by a California district court over a declaratory judgment defendant-patentee who was a resident of New Jersey. 249 F.3d at 1364, 58 USPQ2d at 1779. The patentee had negotiated the four patent license agreements at issue via telephone or mail from his New Jersey residence. *Id.* at 1361, 58 USPQ2d at 1777. He had traveled to California to conduct discussions concerning these agreements only once, for a "get acquainted" session. *Id.* The patentee's only other related contact with the forum was a cease-and-desist letter, which alone would have been insufficient to satisfy the requirements of due process. *Id.* at 1361, 58 USPQ2d at 1777 (citing *Red Wing Shoe Co. v. Hockerson Halberstadt, Inc.,* 148 F.3d 1355, 1361, 47 USPQ2d 1192, 1197 (Fed.Cir.1998) ("As this court has stated before, cease-and-desist letters alone do not suffice to justify personal jurisdiction.")); *Genetic Implant Sys., Inc. v. Core–Vent Corp.,* 123 F.3d 1455, 1458, 43 USPQ2d 1786, 1789 (Fed.Cir.1997); *Akro,* 45 F.3d at 1548, 33 USPQ2d at 1511)). These contacts constituted sufficient minimum contacts because, although the negotiation efforts were accomplished from New Jersey via telephone and mail, they

were still activities "purposefully directed" at California residents. *Id.* at 1361–62, 58 USPQ2d at 1777 (citing *Quill Corp. v. N. Dakota,* 504 U.S. 298, 307–08, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.") (quoting *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174)).

Similarly, this court reversed a dismissal for lack of personal jurisdiction over the declaratory judgment defendant-patentee in *Akro* notwithstanding the fact that neither he nor his agent had been to the forum state. 45 F.3d at 1542–43, 33 USPQ2d at 1775–76. Nevertheless, the patentee's contacts with the forum State of Ohio constituted sufficient minimum contacts; the patentee purposefully directed his activities at Ohio residents by negotiating an exclusive patent license agreement with Ohio residents, and by directing letters warning of patent infringement to their agents. *Id.* at 1546, 1509.

UTIF's contacts with Kansas are at least as significant. UTIF purposefully directed activities at DAHI, in Kansas. Although DAHI initially contacted UTIF about the prospect of licensing certain of UTIF's technology, UTIF responded with telephone calls and letters to negotiate the agreement. Moreover, UTIF's president twice traveled to Kansas to negotiate, and amend, the resulting ongoing license agreement pertaining to the technology that developed into the '164 patent. As the license agreement required, UTIF sent DAHI, in Kansas, copies of correspondence with the patent office and kept DAHI apprised of the prosecution status of the application that matured into the '164 patent. UTIF also sent a letter contending that Anipryl is subject to the license agreement to DAHI in Kansas. These constitute sufficient minimum contacts.

■ DAHI's declaratory judgment suit, which seeks a declaration that Anipryl is not covered by the license agreement and that the '164 patent is invalid and not infringed by Anipryl, directly relates to UTIF's contacts with DAHI in Kansas. *See Inamed,* 249 F.3d at 1362–63, 58 USPQ2d at 1778 (finding that negotiation and execution of agreement to license patent in forum were contacts sufficiently related to the litigation where the alleged causes of action would necessitate inquiry into the factual circumstances surrounding the then-terminated agreement). Thus, unless UTIF can "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable," *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174, the exercise of personal jurisdiction is proper.

■ UTIF attempts to escape this result by pointing out that other courts have declined to exercise jurisdiction where the defendant's contact with the forum consisted primarily of negotiating an agreement that contained forum selection or choice of law provisions selecting a foreign state or country. In support of this contention, UTIF cites five decisions, in which our sister circuits have deemed the exercise of jurisdiction unconstitutional due, at least in part, to foreign forum selection or choice of law clauses in the contracts at issue. *See LiButti v. United States,* 178 F.3d 114, 123 (2d Cir.1999) (finding no purposeful availment of New York law where Kentucky defendant's contact was based upon an agreement containing Kentucky choice of law provision, even though "defendant entered into the syndicate agreement within Kentucky's borders"); *Marathon Oil Co. v. A.G. Ruhrgas,* 182 F.3d 291, 295 (5th Cir.1999) (affirming dismissal for lack of jurisdiction and stating that defendant had

no reasonable expectation of being haled into Texas court by virtue of attending three meetings in Texas, where the meetings pertained to negotiation of a contract governed by Norwegian law and providing specifically for Swedish arbitration); *Int'l Techs. Consultants, Inc. v. Euroglas S.A.,* 107 F.3d 386, 396 (6th Cir.1997) (finding no jurisdiction where contract specified it was governed by the law of Switzerland and placed jurisdiction there); *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.,* 792 F.2d 989, 994 (11th Cir.1986) (finding no purposeful availment of the benefits and protections of Florida law where contract contained English choice of law provision); *Hydrokinetics, Inc. v. Alaska Mech., Inc.,* 700 F.2d 1026, 1029 (5th Cir.1983) (finding no purposeful availment where Alaskan defendant negotiated contract with Texas plaintiff that was to be governed by Alaskan law even though defendant's officers twice traveled to Texas to inspect plaintiff's facilities and to resolve a dispute). UTIF also cites district court decisions reaching similar results. *See, e.g., Brokerwood Prods. Int'l v. Midland 2000, Inc.,* No. Civ. A. 00–2991, 2001 WL 118596 at *4–6 (E.D.La. Feb.8, 2001) (dismissing breach of contract suit by Louisiana subsidiary of Canadian corporation for lack of personal jurisdiction over Canadian defendant where contract provided it was to be governed by the law of Quebec).

These cases are inapposite. None of these cases involved agreements to license technology protected by a United States Patent. Obtaining such a patent is a meaningful contact with the United States; it requires a patentee purposefully to avail him or herself of a significant benefit of United States law. *Nat'l Patent Dev. Corp. v. T.J. Smith & Nephew Ltd.,* 877 F.2d 1003, 1010, 11 USPQ2d 1211, 1216 (D.C.Cir.1989) (en banc) (R.B. Ginsburg, J.) ("By registering a patent in the United States Patent Office, a party residing abroad purposefully avails itself of the benefits and protections patent registration in this country affords."). Section 293 of Title 35 of the United States Code underscores the significance of the benefit of the patent right. Section 293 is a special long-arm statute that requires patentees residing outside the United States either to designate an agent residing somewhere within the United States for service of process or to submit to jurisdiction in the United States District Court for the District of Columbia. 35 U.S.C. § 293 (2000). Although § 293 does not directly authorize the exercise of jurisdiction over UTIF, the statute represents an important Congressional judgment that in exchange for obtaining the benefits of a United States patent, it is appropriate to require foreign patentees to submit to broader jurisdiction in United States Federal Court than that to which they would otherwise be subject. *See Japan Gas Lighter Ass'n v. Ronson Corp.,* 257 F.Supp. 219, 228, 150 USPQ 589, 594 (D.N.J.1966) (Section 293 was "designed to assist a plaintiff by producing an alternative avenue to obtain personal jurisdiction and service where it would otherwise be difficult or impossible.").

■ Licensing the practice of the invention claimed in a United States patent constitutes additional purposeful availment of the benefits of United States patent law. *See Genetic Implant Sys.,* 123 F.3d at 1458–59, 43 USPQ2d at 1789–90 (concluding that appointing a distributor to sell a patented product constituted purposeful availment of facilities in the distributor's state because appointing a distributor is akin to granting a license). Like any other contract, a patent license agreement requires consideration by both parties. A patent allows a patentee to exclude others from practicing an invention in the United States that they otherwise might be free to practice without providing consideration

to anyone. *See* 35 U.S.C. § 154(a)(1) (2000) ("Every patent shall contain ... a grant to the patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States...."). A patentee who grants a license thus contracts for valuable consideration in exchange for surrendering the right to exclude the licensee from practicing the patented invention. Thus, the act of contracting for consideration in exchange for licensing the practice of an invention claimed in a United States patent constitutes purposeful availment of the benefits of United States patent law.

We are not persuaded that the inclusion of foreign choice of forum and choice of law provisions in a license agreement for a United States patent diminishes the significance of UTIF's contacts with Kansas or of its purposeful availment of the benefits of licensing the '164 patent. As a contractual matter, these clauses may control. But as a constitutional matter the arbitration and Canadian choice of law clauses fail to undermine the sufficiency of UTIF's contact with Kansas. By obtaining the '164 patent and licensing it to DAHI in Kansas, UTIF purposefully availed itself of significant benefits of United States law. The '164 patent affords UTIF the right to exclude others from making, using, selling, or offering the claimed invention for sale in the United States. *See id.* As we have explained, when UTIF negotiated with DAHI in Kansas for an ongoing license to practice the claimed invention, UTIF engaged in even greater contact with the forum than this court found sufficient in *Inamed* and *Akro.* The arbitration and Canadian choice of law provisions cannot render those contacts insufficient because by licensing the '164 patent UTIF contracted for and received consideration in exchange for surrendering the right to exclude, a property right uniquely granted to UTIF by United States patent law. UTIF's pur-

poseful availment was substantial; UTIF exercised the privileges of conducting business in Kansas and exploiting the benefits of its United States patent by licensing the patent to a Kansas operation. This remains so regardless of the forum and law that are to determine the terms of the parties' contractual exchange of patent rights, and regardless of the fact that DAHI's parent is a Canadian corporation.

■ The Supreme Court's decision in *Burger King* is consistent with this result. In *Burger King,* the Supreme Court stated that choice of law provisions alone would be insufficient to confer personal jurisdiction in the chosen forum. 471 U.S. at 482, 105 S.Ct. 2174. The Court then stated that "[n]othing in our cases, however, suggests that a choice-of-law *provision* should be ignored in considering whether a defendant has purposefully invoked the benefits and protections of a State's laws for jurisdictional purposes." *Id.* (internal quotation marks omitted). This renders choice of law provisions merely one factor a court must consider in determining whether a party to the agreement purposefully availed itself of the law of that forum. No Supreme Court cases, however, speak to whether the choice to govern an agreement by one forum's law can defeat a party's purposeful availment of the benefits of another forum's law. At most, the inclusion of choice of law and forum provisions is merely one factor to consider. We have considered it. As explained above, in the context of this patent license agreement, we find that the inclusion of the arbitration and Canadian choice of law provisions fails to negate the sufficiency of UTIF's minimum contacts.

We therefore conclude that UTIF's contacts with Kansas satisfy due process. Unless UTIF can demonstrate that other considerations would render the exercise of jurisdiction so unreasonable as to violate

fair play and substantial justice, we must reverse the dismissal for lack of personal jurisdiction.

### 2. *Fair Play and Substantial Justice*

■ Although the district court found that UTIF had sufficient minimum contacts with Kansas, it nevertheless dismissed for lack of personal jurisdiction because it determined that the exercise of jurisdiction would be constitutionally unreasonable. We disagree.

■ Determining whether UTIF has demonstrated that the exercise of jurisdiction would be so unreasonable as to violate fair play and substantial justice requires consideration of several factors. *Inamed*, 249 F.3d at 1363, 58 USPQ2d at 1778. These factors include: 1) the burden on the defendant, 2) the interests of the forum state, 3) the plaintiff's interest in obtaining relief, 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* (citing *Asahi Metal Indus. Co. v.Super. Ct. of Cal.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

UTIF argues that these factors render the exercise of jurisdiction constitutionally unreasonable. First, it notes that other courts apply a sliding scale in assessing reasonableness, requiring the defendant to make less of a showing to establish unreasonableness when the showing of minimum contacts is weak. *See, e.g., Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir.1994). UTIF contends that its only connection with Kansas is the license agreement with DAHI, and that connection is tenuous because DAHI is wholly owned and operated by its Canadian parent, Draxis. Second, UTIF contends that because it is a Canadian corporation, the burden of litigating this dispute in Kansas

would be great. *See OMI. Holdings*, 149 F.3d at 1096 ("In order to litigate the case in Kansas, Defendants will not only have to travel outside their home country, they will also be forced to litigate the dispute in a foreign forum unfamiliar with the Canadian law governing the dispute."). UTIF argues that the district court properly determined that Kansas has no genuine interest in the resolution of the present dispute. In contrast, Canada has a sovereign interest in resolving this dispute between two Canadian companies that, by the terms of the license agreement, is governed by Canadian law. Canada can provide adequate relief, and the dispute will be most efficiently settled there.

We disagree with UTIF on each of the pertinent factors. Initially, we leave for another day the question whether to adopt the First Circuit's sliding scale approach to the reasonableness inquiry; there is no need to consider whether UTIF may establish unreasonableness with a less stringent showing because we do not find the showing of minimum contacts weak. Rather, as we have explained at length, obtaining a United States patent and negotiating an ongoing license of the claimed invention constitute substantial contacts with DAHI in Kansas. This litigation arises out of those contacts. Through those contacts UTIF purposefully availed itself of the privileges of conducting business in Kansas, and of exploiting the benefits of the '164 patent. These are not the kind of tenuous contacts that would enable UTIF to invoke the sliding scale in order to demonstrate unreasonableness with a less stringent showing than would otherwise be required. *Cf. Ticketmaster–New York*, 26 F.3d at 212 (showing of minimum contacts was frail enough to be overcome by the inconvenience of litigating in the forum where Canadian defendant's contact with the forum consisted of making an allegedly defamatory remark in a phone

call initiated by a Massachusetts journalist).

In any event, the factors pertinent to our reasonableness inquiry fail to demonstrate that subjecting UTIF to litigation in Kansas would violate fair play and substantial justice. First, although it is true that UTIF's status as a Canadian corporation is not insignificant, the burden of subjecting UTIF to litigation in Kansas is relatively minimal. *Cf. Aristech Chem. Int'l, Ltd. v. Acrylic Fabricators*, 138 F.3d 624, 629 (6th Cir.1998) (stating that the district court properly afforded special attention to defendant's Canadian status but noting that Canadian defendants do not encounter a particularly heavy burden in light of modern transportation and communication methods and the similarity of the Canadian and United States' legal systems).

Second, Kansas has a substantial interest in the resolution of the patent-related dispute between DAHI and UTIF. In *Beverly Hills Fan Co.*, 21 F.3d at 1568, 30 USPQ2d at 1009, we explained that Virginia had a substantial interest in discouraging injury within its borders, and that this interest encompasses design patent infringement. Just as a state has a substantial interest in preventing patent infringement within its borders, it also has a substantial interest in protecting its residents from claims of patent infringement that may be unwarranted, and in enforcing patent license agreements into which its residents have entered. DAHI is a resident of Kansas. That DAHI has a Canadian parent corporation does not sever the interest Kansas has in protecting DAHI from potentially unwarranted patent infringement claims. In this respect, DAHI's Canadian parent is irrelevant.

Third, DAHI's interest in resolving the dispute in Kansas, the forum it selected, is compromised by the Canadian arbitration clause. The clause does not, however, undermine the constitutional reasonableness of requiring UTIF to litigate in Kansas.

Fourth, the efficient resolution of disputes is not necessarily fostered by resolution of the dispute in either forum. The choice of law clause provides that Canadian law applies to interpretation of the agreement, but even if the parties agreed to arbitrate the validity of the '164 patent, we have no reason to assume a Canadian court or arbitration panel would apply anything other than United States law to that issue. It is therefore likely that adjudicating the entire dispute in either forum would require the application of foreign law to some issues. Moreover, because parties are not required to arbitrate that which falls outside the scope of their arbitration agreement, either forum might decline to decide the entire dispute. Consequently, the efficiency factor fails to demonstrate the unreasonableness of subjecting UTIF to litigation of this dispute in Kansas.

Finally, the shared interest of the several states in furthering fundamental substantive social policies does not render the exercise of jurisdiction unreasonable. The policy of promoting uniform interpretation and enforcement of United States patent law may weigh in favor of Kansas, and the policy of promoting the enforcement of arbitration agreements may weigh in favor of Canada. This tension prevents either policy consideration from being dispositive of the constitutional issue.

Consequently, considering all pertinent factors, this is not one of those "rare cases" in which the defendant has demonstrated a compelling case of unreasonableness. *Beverly Hills Fan Co.*, 21 F.3d at 1568, 30 USPQ2d at 1009 (citing *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174). UTIF has not shown the presence of factors that render the exercise of personal jurisdiction so unreasonable as to violate

fair play and substantial justice. We therefore reverse the dismissal for lack of jurisdiction.

### B. *Arbitration*

 UTIF contends that, in the alternative, this court should affirm the dismissal on the grounds that the arbitration clause of the agreement requires all issues including whether Anipryl infringes the '164 patent and whether the patent is invalid to be resolved by binding Canadian arbitration. DAHI counters that the arbitration clause is not so broad as to encompass the infringement and invalidity claims. Because it is the province of the Canadian courts to determine the scope of the arbitration provision in the first instance, we remand to the district court with instructions to stay proceedings pending the outcome of the Canadian arbitration proceedings.

 Nothing prevents patent-related disputes such as this one from being resolved in binding foreign arbitration. As with other property rights, patent-related rights can be contracted away. *See Flex–Foot, Inc.*, 238 F.3d at 1367–68, 57 USPQ2d at 1641 (holding defendant contractually estopped from challenging validity due to its binding promise not to do so, which was embodied in a voluntarily entered settlement agreement between the parties). Parties may agree to arbitrate patent infringement and validity issues, and such agreements bind the parties. 35 U.S.C. § 294 (2000) ("A contract involving a patent or any right under a patent may contain a provision requiring arbitration of any dispute relating to patent validity or infringement arising under the contract.... Any such provision or agreement shall be valid, irrevocable, and enforceable, except for any grounds that exist at law or in equity for revocation of a contract."). Section 294 is not limited to domestic arbitration, nor is there any compelling reason

to so interpret its authorization of the arbitration of disputes over patent-related rights. *Cf. Warner & Swasey Co. v. Salvagnini Transferica S.p.A.*, 806 F.2d 1045, 1046, 231 USPQ 972, 973 (Fed.Cir.1986) (affirming district court's dismissal on the grounds that patent license agreement required plaintiff-licensee to bring suit in Italy).

Moreover, the Supreme Court has recognized a strong federal policy in favor of arbitration, particularly in the international realm. *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 628–29, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). In *Mitsubishi Motors*, the Supreme Court held enforceable an agreement to resolve an antitrust claim by foreign arbitration. *Id.* at 640, 105 S.Ct. 3346. The Court explained that international comity, respect for foreign tribunals, and the commercial system's need for predictable dispute resolution required holding the plaintiff to its agreement to arbitrate. *Id.* at 629, 105 S.Ct. 3346. These concerns apply with vital force to the resolution of disputes regarding patent rights.

DAHI contends that, notwithstanding the arbitration clause in its agreement, it should not be bound to arbitrate. This is so, it maintains, because the Canadian arbitration proceedings may apply Canadian law to the issue of the validity of the '164 patent, and Canadian law may estop DAHI, as a licensee, from challenging the patent's validity. In *Mitsubishi Motors*, the Supreme Court rejected a similar argument. *Id.* at 636, 105 S.Ct. 3346. In response to the argument that requiring international arbitration might promote uncertainty because of the chance the arbitral tribunal would fail to adhere to the law of the United States in resolving claims arising therefrom, the Court explained:

> To be sure, the international arbitral tribunal owes no prior allegiance to the

legal norms of particular states; hence, it has no direct obligation to vindicate their statutory dictates. The tribunal, however, is bound to effectuate the intentions of the parties. Where the parties have agreed that the arbitral body is to decide a defined set of claims which includes, as in these cases, those arising from the application of American antitrust law, the tribunal therefore should be bound to decide that dispute in accord with the national law giving rise to the claim.

*Id.* at 636–37, 105 S.Ct. 3346.

Likewise, we see no reason to presume that the Canadian arbitral panel will apply Canadian law to determine the validity of the United States patent. In fact, it is uncertain whether the issue of validity necessarily falls within the scope of what the parties agreed to arbitrate. That is an issue for the Canadian courts to determine, at least in the first instance.

Because the agreement contains a broad arbitration clause, and because the present dispute including DAHI's allegations of noninfringement and invalidity arose from UTIF's July 28, 2000 letter contending that the sale of Anipryl is subject to the license agreement, considerations of international comity demand that the district court stay proceedings in the present litigation pending the outcome of the Canadian arbitration. Should the Canadian court determine that either the noninfringement or invalidity issues fall outside the scope of the arbitration clause, the district court may address them at that time. We express no view as to whether the decision of the Canadian court regarding arbitrability will be binding in the district court proceedings.

## IV. CONCLUSION

Because the exercise of personal jurisdiction over UTIF is consistent with the requirements of due process, we reverse the dismissal of DAHI's complaint, and remand to the district court. On remand, the district court should stay proceedings in this case pending the outcome of the Canadian arbitration. The district court's decision is

*REVERSED and REMANDED.*

No costs.