**LOGAN FARMS, et al., Plaintiffs,**

v.

**HBH, INC. DE, et al., Defendants.**

**No. C–1–01–437.**

United States District Court,
S.D. Ohio,
Western Division.

Aug. 29, 2003.

See also 263 F.3d 447.

C. Vernon Lawson, Guy E. Matthews, Rodney K. Castille, The Matthews Firm, Houston, TX, Joseph J. Braun, Thomas L. Stachler, Strauss & Troy, William Robert Jacobs, Cincinnati, OH, for Plaintiffs.

Marcia Voorhis Andrew, W. Stuart Dornette, Taft, Stettinius & Hollister, Cincinnati, OH, Grace M. Mora, Jeffrey R. Gans, Mark Fox Evens, Thelen, Reid & Priest LLP, Washington, DC, for Defendants.

## ORDER

BECKWITH, District Judge.

"The travails of this case would fill a blue book in a final law exam."

*Logan v. The Original HoneyBaked Ham Co. of Georgia, Inc.*, 60 Fed.Appx. 816 (Fed.Cir.2003).

The Federal Circuit knew whereof it spoke. This case comes before the Court on a veritable plethora of pending motions and with a procedural history as complex as any case in recent memory. There are currently pending fifty-two separate motions: eight motions to dismiss for lack of personal jurisdiction (Doc. Nos. 10–1, 11–1, 13–1, 15–1, 16–1, 30–1, 31–1, and 32–1), nineteen motions for summary judgment (Doc. Nos. 10–2, 11–2, 12–2, 13–2, 14–2, 15–2, 16–2, 17–2, 22–2, 23–2, 24–2, 25–2, 26–2, 27–2, 28–2, 29–2, 30–2, 31–2, and 32–2), eleven motions to dismiss for failure to state a claim (Doc. Nos. 12–1, 14–1, 17–1, 22–1, 23–1, 24–1, 25–1, 26–1, 27–1, 28–1, and 29–1), eleven motions to transfer this case to various other judicial districts (Doc. Nos. 10–3, 11–3, 12–3, 13–3, 14–3, 15–3, 16–3, 17–3, 30–3, 31–3, and 32–3), one motion to stay ruling on these motions until discovery is completed (Doc. No. 68), one motion to file supplemental authority (Doc. No. 90), and one motion to file new authority (Doc. No. 94). The Federal Circuit managed to resolve the issues before it without having to elaborate on this case's background. This Court, however, is not so fortunate in as much as a somewhat detailed explanation of this controversy's history is required in order to resolve the litany of pleadings before it. While the Court is not equipped with blue books, we do have on hand an ample supply of ordinary stationary with which to describe the course of this litigation.

## I. *Background*

The Plaintiffs in this case are James P. Logan ("Logan") and Logan Farms, Inc ("Logan Farms"). Logan is a citizen of the state of Texas. Complaint ¶ 2. Logan Farms is a Texas corporation with its principal place of business located in Harris County, Texas. *Id.* ¶ 1.[1] The Defendants in this case are Honeybaked Hams, Inc. ("HBH"), a Delaware corporation with its principal place of business located in Mason, Ohio, and the following licensees of HBH: HBH ML Anderson, Co. ("ML Anderson"), a Texas corporation with its principal place of business in Texas, Honey Baked Ham Co. of Philadelphia, Inc. ("Philadelphia"), a Pennsylvania corporation, HoneyBaked Ham Company PA ("Pennsylvania"), also a Pennsylvania corporation, Honey Baked Ham, Inc. IN ("Indiana"), an Indiana corporation, The Original Honey Baked Ham Company ("Texas"), a Texas corporation, The HoneyBaked Ham Company WI ("Wisconsin"), a Wisconsin corporation, HBH Anderson Co. ("HBH Anderson"), an Indiana corporation, Honey Baked Hams AZ ("Arizona"), an Arizona corporation, Honey Baked Hams OH ("Ohio"), an Ohio corporation, Honey Baked Hams KY ("Kentucky"), a Kentucky corporation, Honey Baked Hams MO ("Missouri"), a Missouri corporation, Honey Baked Hams VA ("Virginia"), a Virginia corporation, Honey Baked Hams MN ("Minnesota"), a Minnesota corporation, Honey Baked Hams KS ("Kansas"), a Kansas corporation, Honey Baked Hams DE ("Delaware"), a Delaware corporation, Graycase Investments, Inc. ("Graycase"), an Oregon corporation, Honeybaked Ham Company WA ("Washington"), a Washington corporation, and The Original Honey Baked Ham Company

---

**1.** Since it appears that Logan and Logan Farms are inseparable in terms of the damages allegedly inflicted by the Defendants, the Court will refer to them collectively as "Logan."

of Illinois, Inc. ("Illinois"), an Illinois corporation.

The roots of the present case stretch back to 1997 and have their evolution in patents that Logan holds for a method of spirally slicing boneless meat products, such as, unsurprisingly given the parties involved, ham. *See* Complaint, Exs. A, B & C. In July 1997, Logan filed suit for patent infringement against The Original Honey Baked Ham Company of Georgia, Inc. ("Georgia") and HoneyBaked Foods, Inc. ("Foods"), alleging that these defendants were using his patented slicing process. Logan filed this lawsuit in the U.S. District Court for the Western District of Louisiana. Logan, however, dismissed his patent infringement suit against Georgia and Foods after entering into a license agreement with not only these two companies, but also with all of Defendants in this case.[2]

Logan perhaps understandably believed that his new license agreement would begin to generate a substantial stream of royalty payments for him. Logan claims, however, that the HoneyBaked Ham representatives had their own devious plans in mind. Logan claims that while negotiations for the license agreement were ongoing, the HoneyBaked Ham licensees were, unbeknownst to him, making plans to discontinue selling all meat products sliced according to Logan's patents so that they would not have to pay him any royalties. Indeed, Defendants appear to admit that this claim is true, but do not see any problem because they say that the license agreement does not require them to sell any products using the patented spiral slicing method. In other words, Defendants appear to admit that while they would have to pay Logan royalties for all meat products sliced by Logan's patented pro-

cess, they contend that nothing in the license agreement compels them to actually use Logan's process. Thus, according to Logan, he was duped into dropping his patent infringement claims for an essentially worthless license agreement.

When Logan figured out what was going on, he resumed litigation of his patent infringement claims against Georgia and Foods, and added state law claims for breach of contract, fraudulent inducement (also known as vice of consent in Louisiana), and a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a). Logan's breach of contract claim was based on Georgia and Foods' alleged failure to sell any spiral sliced meat products. The fraudulent inducement claim alleged that Georgia and Foods failed to disclose to Logan that they had no intention of selling any spiral sliced meats at the time the license agreement was consummated. The Lanham Act count claimed that Georgia and Foods falsely advertised that their meat products were spiral sliced when in fact they were center sliced.

The district court in Louisiana bifurcated Logan's patent claims from the other claims and tried the non-patent claims to a jury first. The jury answered special verdict forms which found that: 1) there was no valid license agreement between Logan and Georgia and Foods; 2) anticipation of a stream of royalties was Logan's principal purpose for entering into the license agreement; 3) Georgia and Foods knew that Logan's principal purpose for entering the license agreement was the anticipated royalty stream; 4) Georgia and Foods fraudulently induced Logan into consenting to the license agreement; 5) Logan stated a claim for false advertising under the Lanham Act; 6) Logan failed to

---

**2.** It appears from the record that one attorney negotiated the license agreement on behalf of all the HoneyBaked Ham entities and that they all signed onto the same agreement. *See* Doc. No. 18, Exs. 18–20.

establish any losses as a result of Georgia and Foods' breach of the license agreement; and 7) Georgia and Foods willfully violated the Lanham Act. *See* Doc. No. 65, Exs. F & G. The jury awarded Logan damages from Foods in the amount of $809,540 on the fraudulent inducement claim and $80,000 on the Lanham Act claim. The jury award Logan damages from Georgia in the amount of $7,934,218 on the fraudulent inducement claim and $400,000 on the Lanham Act claim. *Id.* After the jury returned its verdicts, Logan moved to dismiss his patent infringement claims if defendants dismissed their declaratory judgment counterclaims.[3]

The district court then entered judgment against Georgia and Foods in the stated amounts plus postjudgment interest. The district court's judgment also rescinded the license agreement as between Georgia and Foods and awarded Logan attorney's fees on the fraud claim. The judgment denied Logan's claims for prejudgment interest and attorney's fees under the Lanham Act. *See id.* Ex. I.

Georgia and Foods, however, filed postjudgment motions for remittitur or, in the alternative, for amendment of judgment. According to the district court, Defendants argued that there was no evidence upon which to find that Logan was fraudulently induced to consent to the license agreement, that damages for vice of consent are not appropriate, that the jury's verdict on the Lanham Act claim was against the weight of the evidence, and that damages under the Lanham Act were inappropriate because Logan failed to prove any injury. The district court largely agreed with defendants' arguments. The district court rejected defendants' argument that the jury's verdict on Logan's fraudulent inducement claim was against the weight of the evidence, but found that Plaintiff had sought rescission, not damages, in his vice of consent claim. The district court also found that Logan was not entitled to damages on his Lanham Act claim because there was no evidence that consumers bought meat products because of the slicing or even cared how it was sliced. *See id.* Ex. J. Thus, the district court vacated and set aside all monetary awards for Logan.

Both sides appealed from this judgment, but the Fifth Circuit Court of Appeals affirmed the district court's judgment in all respects. *See Logan v. Burgers Ozark Country Cured Hams, Inc.,* 263 F.3d 447 (5th Cir.2001). Logan also appealed to the Federal Circuit Court of Appeals the district court's decision to amend its dismissal of the patent infringement claims to a dismissal with prejudice. The Federal Circuit, however, decided that it did not have jurisdiction over the appeal because the Fifth Circuit had earlier and correctly determined that the district court did not have jurisdiction to amend the dismissal to a dismissal with prejudice. *See Logan v. The Original HoneyBaked Ham Co. of Georgia, Inc.,* 60 Fed.Appx. 816 (Fed.Cir. 2003).

In September 2000, Logan filed a new lawsuit against a number of HoneyBaked Ham entities, including Foods and Georgia, in the U.S. District Court for the Southern District of Texas, Galveston Division. Later, the Galveston Division transferred the case to the Houston Division. This new lawsuit essentially took the claims for breach of contract, fraudulent inducement, patent infringement, and violation of the Lanham Act that were asserted against Georgia and Foods in the

---

**3.** Georgia and Foods filed counterclaims for a declaratory judgment finding that Logan's patents were invalid and unenforceable and/or for a declaration of non-infringement. At first, the district court dismissed Logan's patent claims without prejudice, but later, on motion of defendants, entered an order making it a dismissal with prejudice.

Louisiana action and transported them to Texas to be filed against a series of new HoneyBaked Ham defendants.[4] The new lawsuit prompted the defendants to file in the Texas courts the same spate of motions now pending here: motions to dismiss, motions for summary judgment, and motions to transfer the case to other districts. On July 10, 2001, Judge Werlein granted Logan's motion to transfer the claims against Delaware, Ohio, Arizona, Kansas, Kentucky, Minnesota, Missouri, and Virginia to this judicial district, where it was assigned case number C–1–01–509. This case was originally assigned to Judge Spiegel's docket but was then transferred to Judge Weber's docket.

Meanwhile, just prior to the transfer of the claims against these Defendants to this district, on June 28, 2001, Logan filed suit in this district against HBH, ML Anderson, Philadelphia, Pennsylvania, Indiana, Texas, Wisconsin, and HBH Anderson. This case was assigned case number C–1–01–437 and was also originally assigned to Judge Spiegel, but in rapid succession was transferred to Judge Dlott and then Judge Weber.

Finally, on September 12, 2001, Logan filed suit against Graycase Investments, Illinois, and Washington in this district. This case was assigned case number C–1–01–609 and was placed on this Court's docket. However, on November 16, 2001, Judge Weber ordered that Logan's various HoneyBaked Ham lawsuits be consolidated into case number C–1–01–437. After having rounded up all the sheep into one pen, Judge Weber transferred the case back to the Clerk's office where it was reassigned to this Court's docket. In the now-consolidated cases, Logan asserts claims for breach of the license agreement, fraudulent inducement, civil conspiracy, patent infringement, and false advertising under the Lanham Act and the Ohio Deceptive Trade Practices Act.

In the midst of the procedural transactions, Defendants managed to file the motions which are now pending before the Court. Although as noted there are fifty-two motions now pending, the substantive ones breakdown along common grounds. The motions to dismiss for lack of jurisdiction over the person all argue that the respective Defendants' contacts with the state of Ohio are insufficient to satisfy the requirements to exercise personal jurisdiction under the due process clause. The Defendants wishing to transfer the case against them all believe that the judicial district where their various principal places of business are located are more convenient fora than this one to litigate these claims. The Rule 12(b)(6) and summary judgment motions of course assert substantive grounds, including res judicata or collateral estoppel, for dismissal of certain of Logan's claims.

■ The various motions to dismiss on personal jurisdiction grounds set up a procedural question which is interesting in the

---

4. Named as Defendants in this action were: HoneyBaked Ham, HoneyBaked Ham, Inc., The Original HoneyBaked Ham Company of Georgia, Inc., HoneyBaked Ham Company of Michigan, Inc., HoneyBaked Ham Company of Ohio, Inc., HoneyBaked Foods, Inc., The Original HoneyBaked Ham Company of the East, Inc., HoneyBaked Ham, Inc. of California, Graycase Investments, Inc., HBH Limited Partnership, The HoneyBaked Ham Company of Arizona, Inc., The HoneyBaked Ham Company (Delaware), The HoneyBaked Ham Company (Kansas), The HoneyBaked Ham Company (Kentucky), The HoneyBaked Ham Company, Minnesota Corporation, The HoneyBaked Ham Company, Missouri Corporation, The HoneyBaked Ham Company, Virginia Corporation, The Original HoneyBaked Ham Company of Illinois, Inc., The HoneyBaked Ham Company, Washington Corporation, HoneyBaked Ham, Inc., Texas Corporation, and HoneyBaked Ham Company, Michigan Corporation.

abstract but might prove difficult to resolve in actual application. The general rule is that the district court should resolve jurisdictional issues before moving on to the merits. *See Combs v. Bakker,* 886 F.2d 673, 675 (4th Cir.1989)(holding district court should have addressed Rule 12(b)(2) motion before Rule 12(b)(6) motion). The general rule can be waived, however, and the court may address the merits first, if a decision on the merits would favor the party challenging personal jurisdiction and the jurisdictional issue is difficult. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 941 & 941 n. 6 (11th Cir.1997). For the following reasons, this case appears to be one where the merits of the some of the claims should be examined first.

■ Federal Circuit law applies to the personal jurisdiction question in patent cases. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,* 297 F.3d 1343, 1348 (Fed.Cir.2002). Federal Circuit law on personal jurisdiction does not apply, however, to counts that are not "intimately linked" to patent law. *Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1201 (Fed.Cir.2003). If the count is not intimately linked to patent law, then the law of the regional circuit applies. *Id.* A count is "intimately linked" to patent law if its resolution depends on the resolution of the patent infringement claim. *Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 857 (Fed.Cir.1999). This case includes claims to which Federal Circuit law on personal jurisdiction would apply, namely the claims for patent infringement, as well as claims which are not dependent on the validity of Logan's patent, namely the Lanham Act false advertising claim. The dichotomy or bifurcation of the jurisdictional analysis becomes problematic in application because Federal Circuit law holds that Ohio's long-arm statute does not reach the limits of the Due Process Clause, *Hildebrand v. Steck*

*Mfg. Co.,* 279 F.3d 1351, 1354 (Fed.Cir. 2002), while the Sixth Circuit, in holdings which are confusing enough in themselves, has stated both that "[i]t is settled Ohio law that the transacting business clause of that statute was meant to extend to the limits of due process," *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996), and that "We have recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits." *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir.2002). Thus, because of the differing standards, it is possible to have different outcomes on the question of personal jurisdiction, based on the same set of facts, depending on the claim at hand. Therefore, to the Court, it makes sense, and would in the long run conserve judicial resources, to determine first whether some claims should be dismissed on the merits rather then attempt to decipher these complicated jurisdictional issues, only to find that personal jurisdiction does exist here, or worse, further compound the procedural nightmare this case has become by dismissing or transferring claims to other courts to be tried in piecemeal fashion. Therefore, the Court first addresses the various motions to dismiss.

## II. *Motions to Dismiss Pursuant to Rule 12(B)(6)*

### A. *Standard of Review*

■ A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. In its consideration of a motion to dismiss under Rule 12(b)(6), the court is required to construe the complaint in the light most favorable to the Plaintiff and accept all well-pleaded factual allegations in the complaint as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) and *Roth Steel Products v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir.1983). A court,

however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University,* 443 F.2d 121, 124 (6th Cir.1971). A court will, though, accept all reasonable inferences that might be drawn from the complaint. *Fitzke v. Shappell,* 468 F.2d 1072, 1076–77 n. 6 (6th Cir.1972).

■ When considering the sufficiency of a complaint pursuant to a Rule 12(b)(6) motion, this Court recognizes that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B. *Analysis*

#### 1. *Collateral Estoppel*

■ Defendants ML Anderson (Doc. No. 10–2), Indiana (Doc. No. 11–2), HBH (Doc. No. 12–1), HBH Anderson (Doc. No. 13–2), Wisconsin (Doc. No. 14–1), Pennsylvania (Doc. No. 15–1), Texas (Doc. No. 16–2), Philadelphia (Doc. No. 17–2), Arizona (Doc. No. 22–1), Ohio (Doc. No. 23–1), Kentucky (Doc. No. 24–1), Missouri (Doc. No. 25–1), Virginia (Doc. No. 26–1), Minnesota (Doc. No. 27–1), Kansas (Doc. No. 28–1), Delaware (Doc. No. 29–1), Graycase Investments (Doc. No. 30–2), Illinois (Doc. No. 31–2) and Washington (Doc. No. 32–2) move to dismiss Logan's breach of contract and Lanham Act claims on collateral estoppel grounds. Before turning to the merits of the collateral estoppel issue, the Court briefly addresses Logan's contention that Defendants have not properly raised the res judicata issue because they have not yet filed answers raising it as an affirmative defense. While it is true that res judicata/collateral estoppel is an affirmative defense which is ordinarily pled in the answer, it is by now clearly established that res judicata may be raised by motion.

*Westwood Chem. Co., Inc. v. Kulick,* 656 F.2d 1224, 1227 (6th Cir.1981). Accordingly, Defendants have properly raised this issue for consideration by the Court even though they have yet to file answers.

■ The doctrine of claim preclusion, sometimes referred to as res judicata, mandates that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties, with respect both to every matter that was actually litigated in the first case, as well as to every ground of recovery that might have been presented. *Action Distrib. Co. v. International Bhd. of Teamsters Local 1038,* 977 F.2d 1021, 1026 (6th Cir.1992). In contrast, issue preclusion, or collateral estoppel, dictates that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation. *Id.*

■ Mutuality between or among the parties is no longer a prerequisite to the application of res judicata in the federal system. In other words, in certain circumstances, collateral estoppel may be used offensively by the plaintiff against a defendant who was a non-party to the prior action, or defensively against the plaintiff by a defendant who was not a party to the earlier action. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327–30, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Patrick v. South Central Bell Tel. Co.,* 641 F.2d 1192, 1199 n. 3 (6th Cir.1980). The present case involves the defensive use of collateral estoppel, which "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" *Parklane Hosiery,* 439 U.S. at 330, 99 S.Ct. 645.

A federal court sitting in diversity looks to federal law on collateral estoppel to determine the preclusive effect of a prior federal judgment. *JZG Resources, Inc. v. Shelby Ins. Co.,* 84 F.3d 211, 213–14 (6th Cir.1996). There are four requisites for defensive use of collateral estoppel: 1) the issue precluded must be the same one involved in the prior proceeding; 2) the issue must actually have been litigated in the prior proceeding; 3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; and 4) the prior forum must have provided the party against whom estoppel is asserted a full and fair opportunity to litigate the issue. *Bills v. Aseltine,* 52 F.3d 596, 604 (6th Cir.1995); *Central Transp., Inc. v. Four Phase Sys., Inc.,* 936 F.2d 256, 259 (6th Cir.1991).

In this case, defensive use of collateral estoppel against Logan on the breach of contract claim is appropriate. As noted above, Logan claims that Defendants breached the license agreement by failing to act in good faith by purposefully refraining from selling spiral sliced meat products. The Court observes, however, that each of the various HoneyBaked Ham entities were signatories to the same agreement and engaged in the same allegedly wrongful conduct which led to the breach of the agreement. *See* Doc. No. 69, Ex. B. These claims presume that the license agreement is enforceable. Logan, however, has already litigated whether this conduct at issue is a breach of the license agreement when he tried the case against Georgia and Foods in U.S. District Court in Louisiana. In that case, the jury found that the license agreement was not valid and, as a consequence, there was no breach of the agreement by Georgia and Foods. Doc. No. 69, Ex. E. Having litigated that issue once, Logan should not now be permitted to relitigate the identical issue by merely suing different Honey Baked Ham entities who allegedly engaged

in the same conduct in performing or not performing the same agreement. *See Parklane Hosiery,* 439 U.S. at 330, 99 S.Ct. 645. If the agreement is not enforceable as to Georgia and Foods, then certainly it is not enforceable as to the remaining Defendants in this case. Therefore, the Court finds that Logan's breach of contract claims against these Defendants are collaterally estopped. Accordingly, Defendants' various motions to dismiss Logan's breach of contract claims are well-taken and are **GRANTED**. These claims are **DISMISSED WITH PREJUDICE**.

Defendants ML Anderson (Doc. No. 10–1), Indiana (Doc. No. 11–1), HBH (Doc. No. 12–1), HBH Anderson (Doc. No. 13–1), Wisconsin (Doc. No. 14–1), Pennsylvania (Doc. No. 15–1), Texas (Doc. No. 16–1), Philadelphia (Doc. No. 17–1) move to dismiss Logan's Lanham Act claims on the grounds of collateral estoppel. In support of their motions, Defendants half-heartedly argue that Logan already litigated his false-advertising claims in Louisiana and the jury has already found that he suffered no injuries as a result of the alleged violations of the Lanham Act. Defendants overlook, however, that in the Louisiana action, the issue of damages was litigated only with respect to Georgia and Foods. Whether any of these Defendants caused damages to Logan as a result their alleged violations of the Lanham Act has not yet been litigated. Thus, Defendants have failed to fulfill a basic requirement for application of collateral estoppel—the issue of damages caused by these Defendants has not been fully and fairly litigated. Accordingly, Defendants' motions to dismiss Logan's false advertising claims on the grounds of collateral estoppel are not well-taken and are **DENIED**.

However, the jury's finding that no valid license agreement existed

between Logan and the Defendants renders Logan's fraudulent inducement claims superfluous. Under Louisiana law,[5] a contract that has been procured by fraud is null and void. *See Placid Oil Co. v. Taylor,* 345 So.2d 254, 259 (La.Ct.App.1977). Where the contract is null and void, the parties are restored to their pre-agreement positions. La. C.C. art.2033. In other words, it is as if the agreement never existed. *See id.* Thus, even accepting as true Logan's allegations that the license agreement was procured by fraud, the proper remedy, as the district judge in Louisiana found, is to restore Logan to his pre-agreement position. This remedy, however, merely overlaps the Louisiana jury's finding that no valid agreement existed between Logan and the Defendants in the first place. Thus, there is no further relief which this Court can grant Logan on his fraudulent inducement claims. Accordingly, Defendants' various motions to dismiss Logan's fraudulent inducement claims are well-taken and are **GRANTED.** These claims are **DISMISSED WITH PREJUDICE.**

**5.** The license agreement specifically states that it is governed by Louisiana law. *See* Doc. No. 65, Ex. B, § 6.16.

**6.** On diversity claims, the district court applies the choice of law rules of the forum state. *Mill's Pride, Inc. v. Continental Ins. Co.,* 300 F.3d 701, 704 (6th Cir.2002). Since this Court sits in Ohio, the Court must apply Ohio choice of law rules. In Ohio, courts will apply the rule of *lex loci delecti,* the law of the place where the tort occurs, unless another state has a more significant relationship to the action. *Muncie Power Products, Inc. v. United Tech. Automotive, Inc.,* 328 F.3d 870, 873 (6th Cir.2003). The trial court must apply the factors set forth in the Restatement (Second) of Conflict of Laws § 145 to determine whether another state has a more significant relationship to the action. These factors are: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence,

### C. *Civil Conspiracy*

Defendants ML Anderson (Doc. No. 10–2), Indiana (Doc. No. 11–2), HBH (Doc. No. 12–1), HBH Anderson (Doc. No. 13–2), Wisconsin (Doc. No. 14–1), Pennsylvania (Doc. No. 15–1), Texas (Doc. No. 16–2), Philadelphia (Doc. No. 17–2), Arizona (Doc. No. 22–1), Ohio (Doc. No. 23–1), Kentucky (Doc. No. 24–1), Missouri (Doc. No. 25–1), Virginia (Doc. No. 26–1), Minnesota (Doc. No. 27–1), Kansas (Doc. No. 28–1), Delaware (Doc. No. 29–1), Graycase Investments (Doc. No. 30–2), Illinois (Doc. No. 31–2) and Washington (Doc. No. 32–2) move to dismiss Logan's civil conspiracy claims on the grounds that Logan does not state a claim of conspiracy without proof of fraud. The Court agrees.

Under Louisiana law,[6] a civil conspiracy consists of an agreement or plan by two or more persons to accomplish some unlawful, immoral, criminal, or evil purpose. *Hall v. Lilly,* 697 So.2d 676, 678 (La.Ct.App.1997). The actionable conduct, however, is not the agreement itself, but rather the tortious, criminal, immoral, or evil conduct which the conspirators actual-

nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. In this case, consideration of these factors points to Louisiana law as the appropriate choice of law. It appears that the alleged fraud took place through use of the mails, but was directed toward Logan's trial counsel in Louisiana. The Court assumes that the injury actually occurred to Logan in his place of residence, Texas. The parties are scattered across the country, so no particular place of residence appears to predominate. Finally, and most importantly, the parties' relationship is centered around the alleged fraudulent or illusory license agreement, which arises out of the litigation and settlement negotiations in Louisiana and which contains a Louisiana choice of law selection clause. Therefore, the Court concludes that the state of Louisiana has the most significant relationship to this case.

ly perpetrate. *See id.* at 679. Without proof of injury from the underlying tortious conduct, a civil conspiracy claim fails. *Aranyosi v. Delchamps, Inc.*, 739 So.2d 911, 917 (La.Ct.App.1999).

■ In this case, Logan's conspiracy claim is based on Defendants' alleged plan to fraudulently induce his assent to enter into the license agreement. As just stated, however, Logan's claims for fraudulent inducement are barred by collateral estoppel. Moreover, Logan has been restored to his original position by the district court in Louisiana in that, as explained further below in Part C, he can still sue Defendants for patent infringement. In other words, Logan has suffered no tortious injury from the alleged conspiracy because he got back from the district court what he allegedly was fraudulently induced to give up—his right to sue Defendants for patent infringement. Thus, Logan fails to state a claim for civil conspiracy. Accordingly, Defendants' motions to dismiss Logan's civil conspiracy claims are well-taken and are **GRANTED**. These claims are **DISMISSED WITH PREJUDICE**.

### D. *Patent Infringement Claims*

■ Defendants move to dismiss Logan's patent infringement on unpersuasive grounds. Defendants argue that because Logan has sued to enforce the license agreement, he admits that the license agreement is valid and therefore has contracted away his right to sue them for patent infringement. This argument, however, overlooks several salient points. First, in arguing that Logan's fraudulent inducement claims should be dismissed, Defendants admit that the proper remedy is for Logan to proceed with his patent infringement claims. *See, e.g.,* Doc. No. 12, at 15 ("Second, if Plaintiffs were fraudulently induced, the only proper remedy is to be restored to their position before executing the license agreement. In this case,

restoration allows Plaintiffs to proceed with their patent infringement claim."). Second, this argument ignores the provisions in the Federal Rules of Civil Procedure which allow parties to plead claims or defenses in the alternative. *See* Fed. R.Civ.P. 8(e)(2). Third, some Federal Circuit case law suggests that a licensor may bring suit against a licensee for breach of the license agreement and for patent infringement. *See C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 880–81 (Fed.Cir. 1983). In any event, Defendants' motions to dismiss Logan's patent infringement claims on these grounds are without merit and, accordingly, are **DENIED**.

### E. *Lanham Act Claims*

■ Defendants Arizona (Doc. No. 22–1), Ohio (Doc. No. 23–1), Kentucky (Doc. No. 24–1), Missouri (Doc. No. 25–1), Virginia (Doc. No. 26–1), Minnesota (Doc. No. 27–1), Kansas (Doc. No. 28–1), Delaware (Doc. No. 29–1), Graycase Investments (Doc. No. 30–2), Illinois (Doc. No. 31–2) and Washington (Doc. No. 32–2) move to dismiss Logan's Lanham Act false advertising claims on statute of limitations grounds. Defendants apparently recognize that the Lanham Act does not prescribe a limitations period for bringing claims. *See, e.g.,* Doc. No. 31, at 27. Defendants may, however, move to dismiss Lanham Act claims on the grounds of laches, and, in determining whether to grant such a motion, courts refer to the statute of limitations on analogous state law claims. *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 366 (6th Cir.1985). Defendants also recognize that the trial court borrows the analogous state law statute of limitations in determining whether the plaintiff's claims are barred. *See, e.g.,* Doc. No. 31, at 27. Accordingly, the Court construes these motions as motions to dismiss on the grounds of laches.

 There is a strong presumption of laches where the analogous state of limitations has elapsed. *Tandy Corp.,* 769 F.2d at 366. A preliminary question arises as to which state the Court should provide the appropriate statute of limitations for purposes of analysis. The choices appear to be either Ohio, the current forum state, Texas, Logan's state of residence, or, perhaps, Louisiana, where many of the events giving rise to this lawsuit occurred. The general rule is that where Congress has not provided a statute of limitations, the trial court should borrow the statute of limitations from the forum state. *International Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.,* 108 F.3d 658, 661 (6th Cir.1997); 4 Wright & Miller, Federal Practice & Procedure § 1056, at 274 (3rd ed.2002). In this case, Ohio is the forum state. Therefore, the Court will borrow the statute of limitations from the analogous claim in Ohio to determine whether laches bars Logan's Lanham Act claims. For Lanham Act claims, the correct statute of limitations to borrow from Ohio is the two-year limitations period in Ohio Rev.Code § 2305.10 [7] on claims for bodily injury or damage to personal property. *Ameritech, Inc. v. American Inform. Tech. Corp.,* 811 F.2d 960, 963 (6th Cir.1987).

According to the complaint, Defendants began advertising falsely that their meat products were "authentic spiral sliced" and "spiral sliced" in November 1997. *See* Case No. C–1–01–509, Doc. No. 100, Second Amended Complaint ¶ 49; Case No. C–1–01–609, Doc. No. 1, Complaint ¶ 45. Logan, however, did not file his Lanham Act claims until December 15, 2000, thus missing the two year period in which to bring his claims by almost a full year. Therefore, Logan's claims are barred by laches. Accordingly, Defendants' motions

to dismiss Logan's Lanham Act claims on the grounds of laches are well-taken and are **GRANTED**. These claims are **DISMISSED WITH PREJUDICE.**

**F.** *Alleged Ohio Deceptive Trade Practices Act Violations*

 The complaint alleges that Defendants violated the Ohio Deceptive Trade Practices Act, Ohio Rev.Code § 4165.02 because they falsely advertised that their meat products are "spiral sliced" and "authentic spiral sliced." Defendants move to dismiss these claims for the fundamental reason that none of the alleged false advertising took place in Ohio or caused injury in Ohio. In other words, Defendants argue that Logan cannot use the Ohio act to recover damages based on conduct that did not occur in Ohio nor caused any injury in Ohio. The Court agrees.

 It is a fundamental principle that a state cannot punish conduct that does not occur within its borders nor causes any harmful effects within its borders. *See BMW of North Am., Inc. v. Gore,* 517 U.S. 559, 571–73, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Because the alleged false advertising took place in Defendants' home states, and did not take place in or have any harmful effects in Ohio, Logan cannot sue these Defendants for violations of the Ohio Deceptive Trade Practices Act. *See id.* Accordingly, Defendants' motions to dismiss Logan's claims under the Ohio Deceptive Trade Practices Act are well-taken and are **GRANTED**. These claims are **DISMISSED WITH PREJUDICE.**

**III.** *Motions to Dismiss for Lack of Personal Jurisdiction*

**A.** *Patent Infringement Claims*

Defendants HBH ML Anderson (Doc. No. 10–1), Indiana (Doc. No. 11–1), HBH

---

**7.** Ohio Rev.Code § 2305.10 states: "An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose."

Anderson (Doc. No. 13–1), Pennsylvania (Doc. No. 15–1), Texas (Doc. No. 16–1), Graycase Investments (Doc. No. 30–1), Illinois (Doc. No. 31–1), and Washington (Doc. No. 32–1) move to dismiss Logan's patent infringement claims pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. In their motions, Defendants argue that their contacts with the state of Ohio are insufficient for this Court to exercise personal jurisdiction over them. As noted above, Federal Circuit law is applicable to the personal jurisdiction question in patent infringement cases. *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir.2002).

■■■■■ The plaintiff bears the burden of proving that exercising personal jurisdiction is proper. Where the parties have conducted discovery on the issue, the plaintiff must prove personal jurisdiction by a preponderance of the evidence. *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed.Cir.2001). If the parties have not conducted discovery on jurisdictional issues, the plaintiff need only make a prima facie showing that personal jurisdiction exists, with the court construing the pleadings and affidavits in the light most favorable to the plaintiff. *Silent Drive, Inc. v. Strong Ind., Inc.*, 326 F.3d 1194, 1201 (Fed.Cir.2003). In this case, the parties have conducted discovery and have submitted voluminous documents and exhibits relating to the question of personal jurisdiction. *See* Doc. No. 20 (parties' stipulation regarding conducting discovery on jurisdictional issues). In addition, the Court heard oral argument on the issue of personal jurisdiction. Therefore, the Court concludes that Logan bears the burden of proving personal jurisdiction by a preponderance of the evidence.

■■■ Determining whether a district court may exercise personal jurisdiction over an out-of-state defendant in a patent case is a two-step inquiry. First, the court must determine whether the forum state's long-arm statute authorizes the exercise of personal jurisdiction over the defendant. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1350 (Fed.Cir.2002). Second, the court must determine whether the exercise of personal jurisdiction comports with constitutional due process requirements. *Id.* Where the state long-arm statute has been interpreted to reach the limits of due process, the two inquiries merge and the trial court may proceed directly the constitutional issue. *Id.* The Federal Circuit, however, holds that Ohio's long-arm statute does not reach the limits of due process. *Hildebrand*, 279 F.3d at 1354. Therefore, the Court must first determine whether the various Defendants are subject to personal jurisdiction under Ohio's long-arm statute, and, if so, proceed to decide whether the exercise of jurisdiction over that particular defendant comports with due process.

■■■ Ohio's long-arm statute states:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

Ohio Rev.Code § 2307.382(A). Although there are many out-of-state defendants in this case, they all assert essentially the same arguments as to the alleged inapplicability of any of these subsections of the long-arm statute in this case. In opposition, Logan limits his discussion of the applicability of the long-arm statute to the Defendants to subsections (A)(1), (A)(3), and (A)(4). Accordingly, the Court concludes that the parties agree that subsections (A)(2) and (A)(5) through (A)(9) are not applicable to the Defendants in this case. Therefore, the Court likewise limits its analysis of the issue to subsections (A)(1), (A)(3), and (A)(4). The Court must interpret the Ohio long-arm statute in accordance with Ohio precedent. *Hildebrand,* 279 F.3d at 1354.

■■ Taking the subsections somewhat in reverse order, the Court first concludes that subsection (A)(3) is not applicable to the out-of-state Defendants. In order for the "causing tortious injury by an act or omission in this state" subsection to apply, both the tortious act and the injury must occur within the state of Ohio. *See Hildebrand,* 279 F.3d at 1355; *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 930 (6th Cir. 1974). In this case, assuming for the moment that the out-of-state Defendants did in fact sell infringing products in the state of Ohio, any injury to Logan occurred in his state of residence, which is Texas. Therefore, subsection (A)(3) is not applicable to the out-of-state Defendants.

Likewise, in order for subsection (A)(4) to apply, the alleged tortious injury must have occurred in Ohio. *Jackson v. State Street Bank & Trust Co.,* 110 Ohio App.3d 388, 674 N.E.2d 706, 710 (1996); *Grossi v. Presbyterian Univ. Hosp.,* 4 Ohio App.3d 51, 446 N.E.2d 473, 476 (1980). As just stated, any injury to Logan caused by Defendants' alleged infringing activities occurred in Texas, not Ohio. Therefore, subsection (A)(4) is inapplicable to the out-of-state Defendants in this case.

■■ Thus, it remains to be determined whether any of the Defendants are subject to personal jurisdiction under the "transacting any business" provision of subsection (A)(1). In determining whether a nonresident defendant's activities constitute "transacting any business in this state," the Court must review the facts on a case-by-case basis. *See U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.,* 68 Ohio St.3d 181, 624 N.E.2d 1048, 1052 (1994). In *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.,* 53 Ohio St.3d 73, 559 N.E.2d 477 (1990), *cert. denied,* 499 U.S. 975, 111 S.Ct.

1619, 113 L.Ed.2d 717 (1991), the Ohio Supreme Court concluded that "transact business" encompasses "carry on business" and "have dealings." *Id.* at 480. Under the case law of the Federal Circuit, however, a defendant who meets the due process clause's standards for general jurisdiction necessarily has transacted business in Ohio for purposes of § 2307.382(A)(1). *See LSI Industries, Inc. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1374 (Fed.Cir.2000); *Delta Sys., Inc. v. Indak Mfg. Corp.,* 4 Fed.Appx. 857, 860 (Fed.Cir.2001). In other words, in resolving the whether the defendant has transacted business in Ohio, the trial court can proceed directly to the due process question.

■ Personal jurisdiction may be either general or specific. General jurisdiction requires a showing that the defendant's contacts with the forum state are "continuous and systematic." *Deprenyl,* 297 F.3d at 1350. If the defendant's contacts with the forum state are continuous and systematic, the plaintiff's cause of action need not arise out of those contacts. *Id.*

■ In order to exercise specific jurisdiction, the defendant must have purposefully directed his activities toward the forum state and the plaintiff's cause of action must arise out of or relate to those contacts. *Id.* If these two requirements are met, the trial court must determine whether the exercise of personal jurisdiction would be reasonable and fair. *HollyAnne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1307–08 (Fed.Cir.1999). The burden is on the defendant, however, to show that the exercise of personal jurisdiction would be unreasonable and unfair. *Viam Corp. v. Iowa Export–Import Trading Co.,* 84 F.3d 424, 429 (Fed.Cir.1996).

In support of their motions, Defendants submit the affidavits of various corporate officers, who aver that their companies are not incorporated in Ohio, nor do they maintain their principal place of business in Ohio. They further aver that they transact no business in Ohio, have no sales in Ohio, maintain no stores in Ohio, do not purchase any goods or services in Ohio, do not engage or solicit business in Ohio, and have never shipped products into Ohio. Thus, Defendants contend, they do not transact business in Ohio.

In opposition, Logan claims that the evidence shows that Defendants are obligated to make monthly royalty payments to HoneyBaked Ham Limited Partnership in Cincinnati, that Defendants transact business with HoneyBaked Foods, an Ohio corporation, and that corporate executives communicate with Ohio, send emails to Ohio, and travel to Ohio for business purposes on a regular basis. Thus, Logan argues, Defendants do transact business in Ohio. Logan, however, does not specifically state whether general jurisdiction or specific jurisdiction is applicable in this case. In fact, he seems to have blended the two inquiries. In addition, although Logan refers collectively to Defendants' contacts with Ohio, the requirement of personal jurisdiction is an individual right, *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), and, therefore, Logan must show that each individual Defendant's contacts with Ohio are sufficient, by themselves, for the Court's assertion of personal jurisdiction to be proper. The Court further notes that Logan has not given cites to the record for the evidence which he claims supports finding personal jurisdiction.

■ Initially, Logan has not shown by a preponderance of the evidence that these Defendants are subject to the Court's general jurisdiction. Although it is true that these Defendants make royalty payments to Ohio on a regular basis, the record shows that at the time Defen-

dants Illinois, Indiana, Pennsylvania, Texas, and Washington became obligated to make these payments, HBH Limited Partnership was located in Michigan and not Ohio. *See* Doc. No. 69, Ex. B, at ILL00037 (Illinois License Agreement), IN00032 (Indiana License Agreement), PA00035 (Pennsylvania License Agreement), TX00037 (Texas License Agreement), WA00035 (Washington License Agreement). Thus, these Defendants directed their activities toward Michigan, not Ohio. The Graycase Investment License Agreement shows that its activities were directed toward the state of Massachusetts. *See id.* Ex. A, at GC0048. The HBH Anderson and HBH ML Anderson franchise agreements are not a part of this record. On the other hand, however, Logan has not cited to the record any evidence which shows that these two Defendants have purposefully directed their activities toward Ohio. If the defendant does not purposefully direct his activities toward the forum state, those contacts are not included in the personal jurisdiction analysis. *See Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.,* 148 F.3d 1355, 1359 (Fed.Cir.1998) ("[C]ontacts only add to the quantum for personal jurisdiction when purposefully directed at the forum or its residents."). In addition, HBH Limited Partnership's move of its headquarters to Cincinnati constitutes "the unilateral activity of others," which is also not included in the jurisdictional analysis. *See id.*

■ Moreover, as Defendants point out in their reply brief, the record actually refutes Logan's conclusory statements that these Defendants have continuous and systematic contacts with Ohio. The record shows that national meetings were held in Chicago, San Francisco, Atlanta, and Irvine, California, but not in Ohio. *See* Doc. No. 69, Ex. U, at GC00631, GC00628, GC00651, OH00253. A draft of a national quality assurance program was circulated among HoneyBaked Ham franchisees, *see* Doc. No. 69, Ex. K, but, as Defendants point out, there is no evidence that this plan was actually adopted by any of the Defendants. In any event, even if this plan had been implemented, agreeing to follow a common strategy on quality assurance is hardly the equivalent of a contact with Ohio, even if the plan was devised in Ohio. Despite Logan's assertion, Logan has not cited or directed the Court to any record evidence that these Defendants in fact transact business with HoneyBaked Foods. According to Defendants, they do not conduct any mail order business with HoneyBaked Foods at all. Except for royalty payments, the effect of which has already been discussed, the Court finds no record of continuous and systemic communications from the Defendants which were directed toward Ohio. In fact, the record shows that most of the substantive communications, i.e., communications addressing the actual operation of the franchises, arise out of or are directed toward HBH headquarters in Massachusetts. *See* Doc. No. 77, Exs. 1, 2, 4, 5; Doc. No. 69, Exs. H, O, V.

■ The Court does find evidence in the record that some executives from Graycase Investments made a visit to Cincinnati in August 1999 to meet with representatives from the Ohio division. Doc. No. 39, Ex. P. However, this visit appears to be a singular event, and therefore, must be classified as being random or attenuated, rather than continuous and systematic. *See Red Wing Shoe,* 148 F.3d at 1359 (" 'Random,' 'fortuitous,' or 'attenuated' contacts do not count in the minimum contacts analysis."). The Court finds no record of similar visits to Ohio made by executives from HBH Anderson, ML Anderson, Illinois, Indiana, Pennsylvania, Texas or Washington.

In summary, the record falls short in establishing by a preponderance of the evidence that these Defendants have continuous and systematic contacts with the state of Ohio.

 If the record is lacking with regard to these Defendants' general contacts with Ohio, it is even more barren of evidence relating to specific jurisdiction. As noted above, for specific jurisdiction to be applicable, the defendant's activities must have been purposefully directed toward the forum state and the cause of action must arise out those contacts. The record shows, however, that the only activities identified by Logan which were arguably purposefully directed at Ohio [8] are not related in any fashion to the patent infringement claim. The payment of royalties to HBH Limited Partnership might have some tangential relationship to the patent infringement claims, however, as explained above, these Defendants did not purposefully choose to enter into a relationship with an Ohio business. Defendants intended to direct their activities towards the states of Michigan and Massachusetts. Therefore, the Court finds that Logan has failed to prove by a preponderance of the evidence that Defendants' contacts with Ohio are sufficient for purposes of specific jurisdiction.

Accordingly, Defendants' motions to dismiss Logan's patent infringement claims for lack of jurisdiction over the person (Doc. Nos. 10–1, 11–1, 13–1, 15–1, 16–1, 30–1, 31–1, 32–1) are well-taken and are **GRANTED**. The patent infringement claims are **DISMISSED WITHOUT PREJUDICE**. These Defendants' motions to transfer the patent claims case to various other judicial districts (Doc. Nos. 10–3, 11–3, 13–3, 15–3, 16–3, 30–3, 31–3, 32–3) are **MOOT**.

### B. *Lanham Act Claims*

Sixth Circuit law applies to the personal jurisdiction question over Logan's Lanham Act claims. *Imagineering, Inc. v. Van Klassens, Inc.*, 53 F.3d 1260, 1263 (Fed. Cir.1995) (applying the law of the regional circuit to Lanham Act claims); *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 819 (Fed.Cir.1992) (same). Although there are some differences in interpretation between the Federal Circuit and the Sixth Circuit regarding the reach of Ohio's long-arm statute, the bottom line is that the plaintiff still must show that the defendant purposefully directed his activities toward the forum state, *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996), or that his contacts with the forum state were continuous and systematic, *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989), in order for the Court's assertion of personal jurisdiction over the Defendants to be proper. For the reasons stated above in Part III. A., none of these Defendants purposefully directed their activities toward Ohio nor do they have continuous and systematic contacts with Ohio. Therefore, the Court does not have personal jurisdiction over these Defendants.

Accordingly, Defendants' motions to dismiss Logan's Lanham Act claims for lack of jurisdiction over the person (Doc. Nos. 10–1, 11–1, 13–1, 15–1, 16–1, 30–1, 31–1, 32–1) are well-taken and are **GRANTED**. These claims are **DISMISSED WITHOUT PREJUDICE**. These Defendants' motions to transfer the Lanham Act claims case to various other judicial districts (Doc. Nos. 10–3, 11–3, 13–3, 15–3, 16–3, 30–3, 31–3, 32–3) are **MOOT**.

---

8. Noting again that Logan failed to give record cites to support these arguments, the activities were attending business meetings in Ohio, transactions with HoneyBaked Foods, and sending emails to Ohio.

## IV. *Remaining Claims*

Remaining in this case are Lanham Act claims against Defendants HBH, Wisconsin, and Philadelphia. These Defendants have filed pleadings which are captioned in part as motions to transfer the claims against them to other judicial districts. *See* Doc. Nos. 12–3, 14–3, 17–3. Presumably, Defendants wish to transfer the claims to more convenient fora pursuant to 28 U.S.C. § 1404(a) or because of improper venue under 28 U.S.C. § 1406(a). Defendants, however, have not supported their motions with any argument or citation to case law, and therefore, are in violation of S.D. Ohio Civ. R. 7.2(a)(1) ("Motions and applications tendered for filing shall be accompanied by a memorandum in support thereof which shall be a brief statement of the grounds, with citation to the authorities relied upon."). Accordingly, Defendants' motions to transfer are not well-taken and are **DENIED**.

Defendants also move to dismiss the Lanham Act claims pursuant to Rule 12(b)(6) on the grounds that Logan has not alleged, nor can he prove, that he suffered any actual injury as a result of their alleged false advertising. *See* Doc. Nos. 12–1, 12–2, 14–1, 14–2, 17–1, 17–2. This argument is based both on alleged pleading deficiencies as well as the fact that in the Louisiana trial, Logan failed to prove that he suffered any damages as a result of the Lanham Act violations.

The latter argument can be dispensed with immediately. As stated above with regard to the collateral estoppel arguments, the case in Louisiana was litigated against Georgia and Foods. Just because Logan failed to prove that he suffered any damages as a result of Georgia and Foods' false advertising, does not, as a matter of law, mean that he did not suffer any damages because of these Defendants' alleged violations of the Lanham Act. Since all the various HoneyBaked Ham entities apparently engaged in the same conduct, one could reasonably assume, based on the Louisiana action, that Logan did not suffer any damages from these Defendants' alleged violations of the Lanham Act. In the absence of discovery on the matter, however, reasonable assumptions are an insufficient basis for dismissal of the false advertising claims. Although Defendants may be right in their assumption, at this point, the Court simply leaves Rule 11 as a guide for the prosecution of these claims.

▮ A claim for false advertising under the Lanham Act requires proof on the following elements: 1) the defendant has made false or misleading statements of fact concerning his own product or another's product; 2) the statement actually deceives or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence a deceived customer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the challenged statements and the harm to the plaintiff. *Balance Dynamics Corp. v. Schmitt Ind., Inc.*, 204 F.3d 683, 689 (6th Cir.2000).

Although not perfectly pled, Logan's complaint for false advertising under the Lanham Act sufficiently puts Defendants on notice of the claims. *See Fisher v. Roberts,* 125 F.3d 974, 978 (6th Cir.1997) (holding claim sufficiently pled where it contained enough information to infer material elements of the claim). Logan's complaint alleges that Defendants introduced into commerce statements which falsely advertised that their meat products were "spiral sliced" and "authentic spiral sliced" when in fact they were not. The complaint further alleges that these statements were false and misleading statements of fact about the nature of Defendants' goods and that Logan suffered

damages as a result of the alleged false statements. These factual allegations sufficiently cover the elements required to state a claim for false advertising under the Lanham Act.

■■■■ Finally, Defendants argue that Logan has failed to allege that he is in competition with them. Contrary to Defendants' argument, however, a plaintiff need not be in actual competition with the defendant in order to have standing to bring a false advertising suit under the Lanham Act. All that is required is that he have a reasonable interest in being protected against the false advertising. *Conte Bros. Automotive, Inc. v. Quaker State–Slick 50, Inc.*, 165 F.3d 221, 230 (3rd Cir. 1998); *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2nd Cir.1994); *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir.1992). Because Logan holds a patent on a method for "spiral slicing" meat, the Court assumes for purposes of the motion to dismiss that he has a reasonable interest in preventing others from falsely advertising that their meat products are also "spiral sliced." Therefore, this argument is without merit.

Accordingly, for the reasons stated, Defendants' respective motions to dismiss Logan's Lanham Act claims are not well-taken and are **DENIED**.

### Conclusion

For the reasons stated, Defendants' motions to dismiss state law claims for breach of contract, fraudulent inducement, civil conspiracy and violation of the Ohio Deceptive Trade Practices Act (Doc. Nos. 10–2, 11–2, 12–1, 13–2, 14–1, 15–1, 16–2, 17–2, 22–1, 23–1, 24–1, 25–1, 26–1, 27–1, 28–1, 29–1, 30–2, 31–2, 32–2) are well-taken and are **GRANTED**. These claims are **DISMISSED WITH PREJUDICE**. Dismissal of these claims renders **MOOT** Defendants' various motions for summary judgment on these claims (Doc. Nos. 10–2, 11–2, 12–2, 13–2, 14–2, 15–2, 16–2, 17–2, 22–2, 23–2, 24–2, 25–2, 26–2, 27–2, 28–2, 29–2, 30–2, 31–2, and 32–2).

Defendants Arizona (Doc. No. 22–1), Ohio (Doc. No. 23–1), Kentucky (Doc. No. 24–1), Missouri (Doc. No. 25–1), Virginia (Doc. No. 26–1), Minnesota (Doc. No. 27–1), Kansas (Doc. No. 28–1), Delaware (Doc. No. 29–1), Graycase Investments (Doc. No. 30–2), Illinois (Doc. No. 31–2) and Washington's (Doc. No. 32–2) motions to dismiss Logan's Lanham Act claims on the grounds of laches are well-taken and are **GRANTED**. Defendants ML Anderson (Doc. No. 10–1), Indiana (Doc. No. 11–1), HBH (Doc. No. 12–1), HBH Anderson (Doc. No. 13–1), Wisconsin (Doc. No. 14–1), Pennsylvania (Doc. No. 15–1), Texas (Doc. No. 16–1), Philadelphia's (Doc. No. 17–1) motions to dismiss Logan's Lanham Act claims on the grounds of collateral estoppel are not well-taken and are **DENIED**.

Defendants HBH ML Anderson (Doc. No. 10–1), Indiana (Doc. No. 11–1), HBH Anderson (Doc. No. 13–1), Pennsylvania (Doc. No. 15–1), Texas (Doc. No. 16–1), Graycase Investments (Doc. No. 30–1), Illinois (Doc. No. 31–1), and Washington's (Doc. No. 32–1) motions to dismiss Logan's patent infringement and Lanham Act claims pursuant to Rule 12(b)(2) for lack of jurisdiction over the person are well-taken and are **GRANTED**. These claims are **DISMISSED WITHOUT PREJUDICE**.

Defendants HBH, Wisconsin, Philadelphia's motion to transfer Logan's patent infringement and Lanham Act claims to other judicial districts (Doc. Nos. 12–3, 14–3, 17–3) are not well-taken and are **DENIED**. In addition, Defendants HBH, Wisconsin, and Philadelphia's motions to dismiss Logan's Lanham Act claims pursuant to Rule 12(b)(6) (Doc. Nos. 12–1, 12–2, 14–1, 14–2, 17–1, 17–2) are not well-taken and are **DENIED**.

Logan's motion to defer ruling on the motions until further discovery is conducted (Doc. No. 68) is **MOOT**, except of course that he will be permitted to conduct discovery on the claims still remaining in this case. The motions to file new and supplemental authority (Doc. Nos. 90 & 94) are **MOOT**.

**IT IS SO ORDERED**